HELEN C. G. WARNER ET AL., APPELLANTS, VS. ALEXANDER S. WATSON, AS TRUSTEES, ET AL., AP-PELLEES.

1. When a married woman voluntarily permits her husband to use her money as his own by investing it in property in his own name, and thereby obtains credit on the faith of his being the owner of such property, she can not be allowed in equity to interpose a claim to the property so acquired by her husband to the detriment of his creditors. The doctrine of estoppel will apply to her under such circumstances in equity.

2. A mortgage is a purchaser to the extent of his interest in the mortgaged property, and where it appears that he is a bona fide purchaser for value and without notice of any secret unrecorded claim or interest in such property, he will be protected as such purchaser.

Appeal from the Circuit Court for Manatee county.

STATEMENT.

In November, 1886, Alexander S. Watson, as trustee, and J. H. Viser filed a bill against George Booker, Jr., Warburton S. Warner and wife, Helen C. G. Warner, to foreclose a trust deed executed on the 5th day of October, 1885, by Booker to Watson, as trustee, to secure the sum of $1,000, evidenced by a promissory note of even date with the trust deed executed

by Booker to Viser, with two *per cent.* interest *per* month. The property described in the trust deed mentioned is the enclosed lot of land surrounding the Hoosier Saw Mill at Palma Sola, in section twenty, township thirty-four south, of range seventeen east, including Hoosier Saw Mill and fixtures, blacksmith shop and water tank, together with all and singular the tenements and improvement thereon of every name, kind and description, and situated in Manatee county, Florida. It is further alleged that in February, 1886, Booker conveyed the said property to Mrs. Warner, and that she and husband, Warburton S. Warner, executed at the same time a writing to Booker assuming to pay the debt secured by the trust deed.

Subsequently, in January, 1887, Watson and Viser filed another bill against Booker and wife, Warburton S. Warner and wife, and F. N. Horton and wife to foreclose another deed of trust executed in December, 1885, by Booker and wife to Watson, as trustee, to secure the sum of $1,500, evidenced by Booker's note to Viser, with two *per cent.* interest *per* month. The property described in this trust deed is as follows, *viz:* all of the lot of land on which is situated the Hoosier Mills, in the village of Palma Sola, in Manatee county, including the lot enclosed around said mill, and all appendages and appurtenances thereto, as fully and to the extent of the title obtained by Booker at the sheriff's sale under execution against W. S. Warner on the 5th day of October, 1885, including all mills, machinery, fixtures, tanks and buildings thereon or thereto appertaining. Said property being in section seventeen, township thirty-four S., range seventeen east; also the dwelling house and premises of said Booker, known on plan of survey by C. Campbell as lot 2 in block 14, same section as the above described

property; also twenty-one and 83-100 acres of land near Ellenton, in said county, being the N. $\frac{1}{2}$ of the E. $\frac{1}{4}$ of the W. $\frac{1}{2}$ of the S. E. $\frac{1}{4}$ of section seven, township thirty-four, R. eighteen E., formerly owned by the heirs of J. W. Dabney. The section mentioned in describing the first parcel, the Hoosier Mill property, is alleged to have been inserted by mistake, and that it should be in section twenty, instead of section seventeen. This is asked to be corrected. It is also alleged that when Booker conveyed, in February, 1886, the Hoosier Mill property to Mrs. Warner (the said property being also embraced in the second trust deed to secure the additional sum of $1,500), she and her said husband agreed in writing with Booker to assume, and did assume, the payment of the said sum of $1,500, thereby assuming to pay the entire amount of $2,500 secured by the said trust deeds.

Demurrers were filed by Warner and wife to both bills, and, the demurrers being sustained, an amendment was filed. No questions are presented on this appeal as the rulings of the court on the demurrers, and no special reference need be made to the record relating to them. The suits were consolidated, and Booker, Warner and wife answered the amended bill, and Mrs. Warner, by her next friend, George C. Warner, filed a cross bill against Warburton S. Warner, George Booker, Jr., J. H. Viser and Alexander S. Watson, trustee. Horton and wife did not answer the bills filed by Watson and Viser, and no further notice was taken of them after service of procees. Booker admitted the allegations of the bills to be true.

Exceptions were filed to the answers of Warner and wife, but it seems that the exceptions were abandoned, and replications filed in the answers. Demurrers were filed by Watson, Viser and Booker to the cross-bill of

Mrs. Warner, and these demurrers being sustained, the cross-bill was amended. There is no question presented here on the ruling of the court on the demurrers to the cross-bill, and further reference to the record as to such matters is omitted. After the cross-bill was amended, Watson, Viser and Booker answered, and Mrs. Warner filed replications to answers of Viser and Booker.

The appeal to this court is solely on behalf of Mrs. Warner, and the issues presented by her answer and cross-bill will only be referred to in this statement. In her answer Mrs. Warner admits that it may be true, as alleged in the bill of complaint, that Booker, the grantor in the trust deeds, had a deed to the Hoosier Mill property and appurtenances under a sheriff's sale on execution against Warburton S. Warner, but it is denied that his title was in fee simple; that while the said Hoosier Mill property may have been sold as the property of Warburton S. Warner, it was not his property, but had been bought with her money, and all the improvements placed on said property had been paid for with her money. Further, that if said mill property had been the property of Warburton S. Warner, Booker should have no title to it for the reason that when said sale was made he was in the employment of Warburton S. Warner as agent, business manager and confidential friend, to look after said property, and that he, Booker, made said purchase as agent and friend of said Warner while he was absent in the city of New York, and with the express agreement and understanding that it was made for his benefit; and such assertions being made at the time of the sale to bidders, caused said property to bring only the sum of $1,000, when it was worth the sum of twelve thousand dollars. That after purchasing said mill property and obtaining

a title to himself, he made a deed of trust in his own name to J. H. Viser for $1,000, about nine hundred and fifty-five dollars of which was applied to the execution under which said property was sold, and the balance was accounted for to W. S. Warner. Afterwards, in December, 1885, the said Booker, notwithstanding he had bought said property for W. S. Warner, took advantage of the fact that the title was in him and again executed a trust deed for the benefit of Viser for $1,500, which was procured for Booker's own benefit, in violation of the trust reposed in him, and of Warner's rights as the equitable owner of said property. It is also alleged that Watson, who was designated as trustee, and Viser were fully acquainted with the facts above alleged at the time the said advance last charged was made, and respondent did not know of the last mentioned deed of trust or mortgage.

It is admitted that Booker and wife deeded the said mill property to respondent upon the condition that she and the said W. S. Warner would assume the payment of the mortgage for $1,500, as well as the one for $1,000, to procure the money to buy the property at sheriff's sale. Respondent alleges that the $1,000 was an individual debt of W. S. Warner in which she had no interest, and that the $1,500 debt was for the individual benefit of Booker, in which neither she nor W. S. Warner had the slightest interest; that in executing the obligation assuming to pay the two mortgages of $2,500, she did so only at the request of her husband, who represented to her that it was better to submit to the imposition of Booker's demand than to be subjected to his avarice in holding the title to the property which he had so fraudulently procured and claimed, he having assumed entire control of the property, and even more than was covered by the purchase, and had

given notice to renters to attorn to him, and for said Warner to remove his lumber from the yard, and was adopting oppressive, dictatorial and tyranical measures in regard to the property.

It is denied that the title to the said property was vested in Watson as trustee; or that he had any interest whatever by virtue of said transactions, and it is averred that the trust deeds can not amount to any more than the mortgages, and that said mortgage is void through fraud as to all the said property in which respondent is interested.

The cross-bill refers to the proceedings on the part of Watson and Viser to foreclose the trust deeds, and reiterates in substance the allegations of the answer of Mrs. Warner thereto. It is alleged in the cross-bill that the enclosed lot of land surrounding Hoosier Saw Mill at Palma Sola, in section twenty, township thirty-four south, range seventeen east, including Hoosier Saw Mill and fixtures, blacksmith shop and water tank is not the property of Booker or his wife, nor was it at the time of the sale to Booker under execution the property of Warburton S. Warner, the husband of complainant. The cross-bill specifies with minute detail the property owned by Mrs. Warner, the complainant, and how she obtained it, and alleges that her property, amounting to thousands of dollars, was placed by her to the credit of her husband, and that he, having no property of his own, invested her property in lands and other property in Florida, and that the said Hoosier Saw Mill property was bought entirely with her money. It is further alleged that while W. S. Warner was absent in New York on business requiring his personal attention, and while the said Booker was employed by him and in charge of the said Hoosier Mill and the business pertaining thereto, the said property

was seized under an execution in favor of the Sessing-haus Milling Co., against W. S. Warner, and sold on the first Monday in October, 1885, by the sheriff to George Booker, Jr., as shown by the deed of conveyance attached to the original bill. The allegations of the answer as to the purchase of said property by Booker for W. S. Warner, and the execution of the trust deeds to secure Viser in the sum of $2,500, are repeated substantially in the cross-bill, and it is further alleged that the said Hoosier Saw Mill property from the time of its purchase was the trust property of complainant, Helen C. G. Warner, having been purchased with her own money, and that the Sessinghaus Milling Co., Brooker, Watson and Viser knew this to be the fact; that it was known generally in the community, and personally known to the defendants in the cross-bill, that W. S. Warner had no property of his own, and that he was using the property of complainant in purchasing the said Hoosier Mill property and all others purchased by him in his name. It is further alleged that after W. S. Warner returned from New York, it was agreed between him and Booker that the latter should convey the said Hoosier Mill property to complainant upon the condition that she and her said husband would assume in writing the payment of the said sum of $2,500 due Viser, and secured by said trust deeds, and that this agreement was carried out to the extent of the execution of the deed of conveyance and the written obligation assuming the payment of said sum of money. It is alleged, however, that W. S. Warner was ignorant of his own rights and these of complainant when said agreement was made. It is also alleged that W. S. Warner had conveyed some property purchased by him with complainant's money to her, but it was not in value sufficient to pay for the

money belonging to her and which he had used, and that he was hopelessly insolvent.

There were interrogatories propounded to the defendants, which need not be set out, as the foregoing statement is sufficient to exhibit the points of controversy upon which the case was decided below, and upon which it depends in this court.

The prayer of the cross-bill is, that the Hoosier Mill property described in the trust deeds be declared to be the separate property of Mrs. Warner, and that the foreclosure proceedings be enjoined.

The answers of Booker and Viser set forth the transactions as to the sale of the Hoosier Mill property under execution, and the purchase by Booker, and the loan of the money to him by Viser, secured by the trust deeds. It is expressly and positively denied that the defendants, Watson, Viser and Booker had any knowledge, actual or constructive, of the fact that Mrs. Warner ever had any interest in the property, or that her money went to purchase the same. In short, the answer denied all the material allegations of the cross-bill, upon which the complainant therein relied for relief.

The court decreed that the complainant Viser was entitled to the relief prayed in the two bills of complaint, and recited that a master had been appointed to compute what was due on the notes secured by the trust deed, and that he had reported the total amount due for principal, interest, costs and attorney fee to be $6,128.60, and it was decreed that this sum was due complainant. The property described in the trust deeds was ordered to be sold at public auction to pay the amount found due and interest thereon, and a commissioner was appointed to make the sale, disburse the money arising therefrom, and execute deeds to the

purchasers; and that W. S. Warner, Helen C. G. Warner, George Booker, Jr., and Kate Booker be forever barred and foreclosed of and from all equity of redemption and claim in and to said property.

Two appeals were entered from the final decree; one in the name of Helen C. G. Warner, and the other in the name of Helen C. G. Warner by her next friend George C. Warner. The purpose, as we infer from the record, was to appeal from the decree granting relief on the bill of complaint, and the refusal of the court to grant the prayer of .the cross-bill.

Reference to the testimony will be made in the opinion.

The other facts in the case are stated in the opinion of the court.

*Hammond* and *Jackson*, for Appellants.

The Sessinghouse Milling Co. obtained a judgment against W. S. Warner amounting in principal, interest and costs to nine hundred and fifty-one dollars and fifty-five cents, and A. S. Watson, sheriff of Manatee county, levied the execution on certain property in Manatee county known as the Hoosier Saw Mill property, which is the property constituting the subject matter of these suits. The property was levied on as the property of W. S. Warner. Watson sold the property at sheriff's sale at Pine Level, in Manatee county, on Oct. 5th, 1885, and at that sale George Booker, Jr., became the purchaser for the amount of the execution, viz: nine hundred and fifty-one 65-100 dollars, and took a sheriff's deed in his own name. On the same day, to-wit: Oct. 5th, 1885, George Booker Jr., executed a mortgage to A. S. Watson as trustee

for Jas. H. Viser, on this same property for one thousand dollars; and afterwards, to-wit: on Dec. 24th, 1885, he executed a second mortgage on the same property to A. S. Watson as trustee for Jas. S. Viser, for one thousand five hundred dollars.  On Nov. 5th, 1886, A. S. Watson as trustee, etc., filed his bill by his solicitors to foreclose his mortgage for one thousand dollars, making as parties defendant thereto George Booker, Jr., W. S. Warner and Helen C. G. Warner; and afterwards, to-wit: on the Feb. 9th, 1887, A. S. Watson as trustee, etc., filed his bill by his solicitors to foreclose his second mortgage of fifteen hundred dollars, making as parties defendant thereto George Booker, Jr., and Katie R. Booker, his wife, Helen C. G. Warner and W. S. Warner, her husband, Freeman N. Horton and Hattie Horton, his wife.  For first bill see record p. 1; for second bill see record p. 7.

To these bills answers were filed by the various defendants, but the true issues involved in the case are disclosed by a cross-bill filed by Helen C. G. Warner by her next friend, etc., for which, see record p. 48.

The facts disclosed by the cross-bill are:

1st. That Helen C. G. Warner inherited a large sum of money upon the decease of her father, Custis Gilbert.

2nd. That this inheritance passed into the hands of her husband Warburton S. Warner.

3rd. That the property involved in this suit, to-wit: the Hoosier Saw Mill property, was purchased by W. S. Warner with the funds of Helen C. G. Warner his wife, and that W. S. Warner took the title to said property in his own name.

4th. That the judgment of the Sessinghouse Milling Co. obtained against Warner was for his individual

debt and that Helen C. G. Warner was in no wise interested therein.

These facts are undisputed and for their verification see the testimony of Warburton S. Warner, Record pp. 176 and 187; Helen C. G. Warner, Record pp. 192 and 196; also copy of will of Custis Gilbert filed in evidence, Record p. 226.

The cross-bill charges that at the time that George Booker, Jr., purchased the Hoosier Saw Mill property on Oct. 5th, 1885, at sheriff's sale and took title to himself, he was the agent and in the employ of W. S. Warner. This fact is undisputed.

The cross-bill charges that at the time Booker made the purchase he made it for the benefit of and intended to hold the property for Warner. For verification of this fact see the testimony of Watson, Record p. 207; Z. King, Record p 212; R. S. Griffith, Record p. 171.

The cross-bill also charges that J. H. Viser and A. S. Watson had at the time of and before the sale knowledge of the fact that Booker was to purchase, and did purchase, as the agent of W. S. Warner, and that he was to take, and did take, title in himself, to hold the same in trust for W. S. Warner.

As to proof of Viser's knowledge of the nature of Booker's purchase see his own confession in his testimony where he says, "I had an impression at the time that the purchase was to be for the benefit of Warner, the owner." Record p. 138.

As to proof of Watson's knowledge of the nature of Booker's purchase, see the testimony of Watson himself, Record p. 207; Also of Z. King, Record p. 212.

A. S. Watson was acting throughout the whole transaction as the trustee and agent of Jas. H. Viser. Viser intrusted the conduct and management of the first loan

of one thousand dollars entirely to Watson, submitting the investigation and approval of the security offered by Booker entirely to him. The relationship of Viser and Watson in the transaction is shown by the bills for foreclosure, Record pp, 1 and 7; also the testimony of Jas. H. Viser himself, Record pp. 137 and 138.

We here call attention to the fact disclosed by the record, that on Feb. 26th, 1886, Booker conveyed by deed, to Helen C. G. Warner, the property involved in this suit. See Record p. 72.

Also to the fact W. S. Warner agreed in writing to pay Viser the $2,500.00 which Booker had borrowed; this agreement was dated Feb. 26th, 1886, and Helen C. G. Warner signed it with her husband. See Record p. 120.

As to what effect, if any, such an agreement would have upon the rights of the parties as they stood at the time it was made, we shall comment hereafter.

The rights to be adjudicated here are those only of Jas. H. Viser and Helen C. G. Warner. What are the relative rights of each—how were they acquired, and which are paramount? Has Viser the right to sell the property, and if so, how did he acquire it? Or has Mrs. Warner the right to keep it, and if so, out of what does such right grow, and upon what is it founded? The solution of either of these questions is a determination of the rights of the other party, and a decision of the case.

We insist:

1st. That the property, which is the subject of this litigation, when a resulting trust, a trust held by W. S. Warner, for the benefit of his wife, Helen C. G. Warner. Tyler on Infancy and Coverture, sec. 303; Story Eq. Jurisprudence, sec. 1380. 1st. Perry on

Trusts sec. 127 p. 142 and authorities cited; 20 Fla. Rep. pp. 171 and 172.

We insist:

2nd. That the testimony shows that Booker purchased with an actual knowledge (or that he is chargeable with an actual knowledge), of Mrs. Warner's interest; that he purchased with the express intention of holding the property in trust for Warner to protect Mrs. Warner's interest, and that at the time he purchased he was standing in a fiduciary relationship to Warner. This being true he can derive no benefit to himself from the purchase, and claim no protection as an innocent purchaser. He must be declared as holding the property in trust. 1st. Story Eq. Juris. sec. 316. 2nd. Story Eq. Juris. sec. 1261.

We insist:

3rd. That Watson was acting as trustee for Viser intrusted with the investment of trust funds, and that in this transaction he is subject to all the rules which govern trustees in the investment of trust funds.

We insist:

4th. That if then it is true that Watson was acting in this transaction as trustee for Viser, that Viser will be bound by any knowledge that Watson had in reference to this transaction, or by any knowledge that Watson *ought* to have had as a prudent man intrusted with the investment of trust money. Wade on the Law of Notice, secs. 23, 27, 30, 31, 32, 33 and 677. 1st. Perry on Trusts, sec. 223.

Here then we have two trustees dealing with each other: Booker dealing with property which he held in trust for Warner, and with notice of Mrs. Warner's equity, and Watson dealing with funds intrusted to him for investment by Viser. Was not the notice to Watson sufficient to acquaint him with Booker's trust

relationship to the property and Mrs. Warner's interest therein? Was he not at least acquainted with facts sufficient to put him upon inquiry? and, if so, would not he and his principal Viser be bound as though they had actual notice? We insist that they were put upon notice and would be so bound. 2nd Perry on Trusts, sec. 828. 1st Perry on Trusts, sec. 217. 1st Perry on Trust, sec. 223.

If the court should hold that Booker's title was a valid title, and his mortgage to Watson as trustee a valid mortgage, we yet insist that the property having been conveyed by Booker to Helen C. G. Warner, the *cestui que trust*, the trust character of the property will reattach, and she would take it divested of the mortgage lien. 2nd Perry on Trusts, p. 481, sec. 830. 1st Herry on Trusts, sec. 222.

As to the obligation signed by Warner, and joined in by Mrs. Warner, to pay Viser the twenty-five hundred dollars to which we have before referred, we insist that it can not give life and force to Viser's mortgages and render that legally effective which was before invalid and void. We insist that it can in no way be construed as binding upon her separate estate; there was but one way that she could charge that estate with a debt, and that was the way pointed out by the statute; neither her silent or her seeming approbation. or approval of the transactions between Booker and Viser or Watson would have such an effect. This was Mrs. Warner's separate property, and was not subject to her husband's debts. Constitution of Fla., 1886, Art. 11, sec. 1. 18 Fla. Rep. pp. 779, 80, 81 and 82. McLellan's Dig. p. 755, secs. 6 and 9, 16 Fla. Rep. pp. 86, 95 and 97. 19 Fla. Rep. pp, 275, 294, 295, 296, 297 and 298. 18 Fla. Rep. pp. 342, 344 and 345.

We insist that it is also unquestionably true that the sale by Watson as sheriff, at which Booker purchased, was a void sale by reason of the fact that there was collusion between Booker, King, and Watson, to suppress bidding and to prevent the property from bringing its full value. That there was such collusion, see the testimony of Watson and Z. King. 5 Abb'tts. Nat. Dig., p. 291. 6 Wall. p. 94. 7 Wall. p. 559. 4 Stewart (N. J. Rep.) p. 176. 11 C. E. Green (N. J. Rep.), p 513. 13 Ala. p. 45. 5 Ala. p. 277. 16 Ala. p. 644. 7 Ala, 269.

We suggest further, that the sale at which this property was sold was a judicial sale, and that the doctrine of *caeveat emptor* applies in all its strictness. If it is true then that Warner held the property in trust for Mrs. Warner, Booker, under the doctrine of *caveat emptor*, took only the title that Warner had, and must be adjudged to likewise hold the property in trust for Mrs. Warner, as did Warner himself. Could Booker, then, being a trustee, mortgage the property so as to defeat the trust, particularly under the facts of this case?' Rorer on Judicial Sales, p. 251, sec's. 602 and 603. 15 Rep., p, 519.

Lastly, we insist that the decree was such as that the property could not be sold under it. It was a decree of strict foreclosure in the first instance, and can not be sustained under our law, Puterbaugh's Chancery, sec. 8, p. 391. Jones on Mortgages, V. 2, sec. 1565.

There are no persons named in the decree from whom the debt is due and no person is directed to pay the same. The decree should name the person or persons liable for the debt, and should direct them in a specified time, to pay the amount mentioned in the decree, and

that in default thereof the property shall be sold. Jones on Mtg's. V. 2, sec. 1586. Puterbaugh's Chan'cy, No. 145, p. 391.

In the decree in this case, the defendants are not specified; and had they been, under it the privilege of paying the debt was not allowed them; the decree is absolute on its face.

*Lucius Finley*, for Appellees.

MABRY, C. J.:

The appeal in this case is prosecuted solely on behalf of Mrs. Helen C. G. Warner, and the only property involved in the controversy to which she makes any claim is the Hoosier Saw Mill property.

It is not questioned that the trust deeds were executed to secure the payment of money loaned by Viser to Booker, and must be regarded as mortgages under our statutes. The first contention for appellants is, that the Hoosier Mill property was held in trust by the husband of Mrs. Warner for her benefit, the same having been paid for with her separate estate, and that Booker who purchased the property at the sale under execution against the husband did so for his benefit to protect the interest of the wife in the property. In the second place it is insisted that Booker, Watson and Viser knew before and at the time of the sale of the property under execution, and at the time of the execution of the trust deeds, that the husband, W. S. Warner, had paid for the Hoosier Mill property with the money of Mrs. Warner, and held it in trust for her benefit. The testimony shows, without contradiction, that Mrs. Warner inherited a considerable estate from her father, the most of which was in the State of In-

27

diana, and that after being converted into money it was deposited by her in bank to the credit of her husband. The latter invested the money, or part of it, in Florida property, and it is clear from the evidence that the Hoosier Mill property, described in the trust deeds, was purchased with money derived from the estate inherited by Mrs. Warner from her father. The answers positively deny that Booker, Watson or Viser had knowledge before the sale of the Hoosier Mill property under execution, or at the time of the execution of the trust deeds, that the same had been purchased with the money of Mrs. Warner, or was held by her husband in trust for her. Warner took a deed to the property in his own name, and this so appears from the record of the deed in the county in which the property is situated. The Sessinghaus Milling Company obtained a judgment against him for some nine hundred dollars, and the Hoosier Mill property was levied upon and sold under an execution emanating from this judgment. Warner had been absent in New York several months when the sale took place, and did not return to Florida for about six months after the sale. He had information that the mill property was levied upon by virtue of the execution, and was advertised for sale, but did not communicate with Booker, who was in his employment and in charge of the mill property, in reference to the sale, nor did he make any arrangements to prevent the same. Booker bought the property at the execution sale for the amount due on the execution and costs, and obtained a deed to the same; but before doing so, and on the day preceding the sale, arranged to get from Viser the money with which to make the purchase, with the understanding that a trust deed was to be executed on the property to secure the amount loaned. This amount was one

thousand dollars, and is represented by the note and trust deed mentioned in the first bill filed. Some three months after executing the first trust deed, Booker obtained an additional loan of fifteen hundred dollars from Viser, and executed another trust deed to secure the same on the Hoosier Mill property and the other property therein described as shown by the second bill filed. It appears that Booker talked with Mrs. Warner about the sale of the property under execution before sale day, and she testified that at first she objected to the purchase by him without the approval of her husband, but learning that Booker could arrange to get the money, and the sale being close at hand, consented to the purchase in his name. She states that Booker agreed to do so for the benefit of W. S. Warner, her husband, and there is testimony showing that Booker stated, at the time and place of sale to a party who expressed a purpose to bid on the property unless it was to be purchased for Warner's benefit, that the purchase was to be made by him with the understanding that Warner could take the property if he desired to do so. Viser was not present at the sale, and there is no showing that he ever knew before the cross-bill was filed that Booker was to let Warner have the propetry, or that it had been purchased by him with money belonging to his wife. At the time of the sale under execution, Mrs. Warner made no claim to the property, and, as stated in her pleadings, she and her husband were ignorant of her rights in the property. Watson was present when the arrangements were made to secure the money from Viser, and consented to act for him in examining the title to the property, and as trustee. It appears that Watson had information of the statement made by Booker at the time of the execution sale, to the effect that Warner should have the

right to take the property if he desired to do so, but there is no showing that he had any knowledge of any interest of Mrs. Warner in the property, or that it had been purchased with money belonging to her. Watson was sheriff and had examined the record before making the levy, for the purpose of ascertaining whether or not W. S. Warner owned the property, and found the title to be in his name. On Warner's return from New York some six months after the sale of the property under execution, a settlement was had between him and Booker, and the latter consented to convey, and did convey, the mill property to Mrs. Warner, upon condition that she and her husband would pay the claims of Viser secured by the trust deeds. It is admitted that they signed an obligation in writing assuming to pay the Viser notes when the deed was delivered to Mrs. Warner. Booker testified that the money realized from the first note given to Viser was applied to the judgment and costs in favor of the Sessinghaus Milling Company, except a small amount which was accounted for to Warner, and that the second sum was borrowed to repair and insure the mill property, and was applied to that purpose, except what went to pay a debt due from Warner to him for a lot of land, and was accounted for in the settlement. The testimony further shows clearly that W. S. Warner had for several years prior to the time when the mill property was sold under the execution mentioned, dealt with it as his own, and was dealing generally with the property purchased by him as if it belonged to him. Not only was the title to it taken in his name, but it was exclusively managed by him, and he admits that he did not inform any one in Manatee county that it had been purchased with his wife's money. Mrs. Warner placed her property in Indiana to the credit of her

husband, and resided with him in Manatee county, and knew that he was holding himself out to the people of the county as the owner of the property. She took no steps to protect her rights in the property, and did not assert any ownership in it for herself when it was levied on by the sheriff. There is no proof that the Sessinghaus Milling Company had any knowledge of her interests before obtaining judgment against her husband or at the time of sale. Under the testimony, the effect of which we have stated as to the material points, the court did not err, in our judgment, in refusing the prayer of the cross-bill, and in decreeing the sale of the property to pay the notes due Viser and secured by the trust deeds. When a married woman permits her husband to use her money as his own, to invest it in his own name, and thereby obtain credit on the faith of his being the owner of the same, she can not be allowed in equity to interpose her claim to the property so acquired to the detriment of her husband's creditors. The doctrine of estoppel will apply to her under such circumstances in equity. Hockett vs. Bailey, 86 Ill. 74; Pomeroy's Equity Jurisprudence, sec. 814; 2 Bishop's Law of Married Women, sec. 490; Brinkerhoff vs. Brinkerhoff, 23 N. J. Eq. 477; Forbes vs. McCoy, 24 Neb. 702, 40 N. W. Rep. 132; Cook vs. Walling, 117 Ind. 9, 19 N. E. Rep. 532, 10 Am. St. Rep. 17 and notes.

Mrs. Warner, according to her own testimony, consented for Booker to buy the property at execution sale, and the only claim she made is that it was purchased for the benefit of her husband. That she had any interest in the property, or that the title to it was to be transferred to her, was not disclosed to Booker until after the trust deeds were executed and the return of Warner from New York. In the settlement

made with Booker it was expressly agreed in writing that the payment of the notes held by Viser should be assumed by Mr. and Mrs. Warner, and though she may not be bound personally on this obligation, yet her husband, who claimed the benefit of the purchase made by Booker, agreed to pay such claims upon the conveyance of the property to his wife. The first loan of $1,000 was to save the property from total loss at sheriff's sale, and Warner expressly consented to the second loan by agreeing to pay it in the settlement made with Booker. Viser, who stands in the position of a mortgagee, is a purchaser to the extent of his interest in the property, and the testimony shows that he was a *bona fide* purchaser for valuable consideration without notice of any claim or interest on the part of Mrs. Warner. Broward vs. Hoog, 15 Fla. 370.

It is claimed in brief of counsel for appellants that the sale to Booker was void because of his conduct in discouraging another party to bid at the sale. It is sufficient to say that Mrs. Warner has accepted a deed from Booker, and all the interest which he acquired at the sheriff's sale has been conveyed by him to her. Booker did not insist on holding the property, but at the instance of Mr. Warner conveyed it to the latter's wife.

We find no merit in any of the grounds of contention on this appeal, and the decree appealed from should be affirmed. Order to be entered accordingly.