FLORIDA LAND HOLDING CORPORATION v. L. P. McMILLEN.

186 So. 188.
Opinion Filed July 6, 1938.
On Rehearing December 27, 1938.

*H. D. Wentworth* and *Wm. E. Thompson,* for Appellant;
*McMullen & Draper,* for Appellee.

CHAPMAN, J.—On April 25, 1934, plaintiff below, appellee here, filed in the Circuit Court of Hillsborough County, Florida, a bill of complaint seeking an accounting and a foreclosure of a mortgage on certain lands situated in Hillsborough County. The note and mortgage sought to be foreclosed are by appropriate allegations made a part of the bill of complaint and attached thereto. It was alleged that plaintiffs' mortgage was a prior lien to that defendant.

On August 27, 1934, the defendant, Florida Land Holding Corporation, filed an answer to the bill of complaint answering all the material allegations and as a prayer for affirmative relief represented: On January 31, 1925, one W. E. Lee and wife, Miriam May Lee, and Golden Ring Groves, Inc., a corporation, made, executed and delivered to the First Savings & Trust Company several notes aggregating $150,000.00 and secured the payment thereof with a mortgage embracing the lands described in the plaintiff's bill of complaint and other lands, and on June 5, 1926, the First Savings & Trust Company assigned and set over and delivered to one B. J. Kline the said mortgage debt and mortgage securing the same. On August 3, 1926, B. J. Kline, for value received, assigned, set over and delivered to Hannah Kline the mortgage debt and mortgage securing the same. On January 31, 1927, Hannah Kline, joined by her husband, B. J. Kline, for value received, assigned, set over and delivered to Morton Kline and Norman Kline the mortgage debt and mortgage securing the same. On January 19, 1928, Morton Kline and Norman Kline, for value received, assigned, set over and delivered to the Florida Land Holding Corporation, a corporation, the mortgage

debt and the mortgage securing the same. It is alleged that each assignment of the mortgage debt and mortgage securing the same, *supra*, was in written legal form and each duly recorded in the public records of Hillsborough County, Florida, as required by law; that the lien of the answering defendant was prior and a superior lien to that of the plaintiff, as the mortgage affects the lands described in plaintiff's bill of complaint; that the Florida Land Holding Corporation is the owner of said notes and mortgage and that the plaintiff, L. P. McMillen, had actual and constructive notice of the rights of the defendant, as well as the rights of its predecessors in title of a prior lien of the mortgaged premises.

It is further stated that the defendant below obtained deeds by foreclosure both in the State and Federal Courts, but the plaintiff below was not bound by either decree entered because she was not made a party, or her rights in and to the land described in the bill of complaint were not adjudicated in either foreclosure had in the State or Federal Courts. The relief sought by affirmative relief is for an accounting, plaintiff's equity of redemption foreclosed and that defendant's mortgage be decreed a superior lien to that of plaintiff in and to the ten acres of land described in plaintiff's bill of complaint. A number of exhibits are attached to defendants's answer seeking affirmative relief and by appropriate allegations made a part thereof.

On October 3, 1934, plaintiff, L. P. McMillen, filed a replication to defendant's answer seeking affirmative relief, in which the following are made issue: (a) that plaintiff McMillen's lien is superior to that of Florida Land Holding Corporation because on December 22, 1922, one W. E. Lee was the owner in fee simple of the land described in the bill of complaint and entered into a written contract of sale, and the sale contract recorded September 9, 1924, in Deed

Book 442 at page 150 of the public records of said county. The said contract made her the equitable owner of the property and she immediately went into the possession thereof, where she cultivated an orange grove, and her possession has been exclusive, open and notorious. On November 2, 1925, plaintiff McMillen conveyed the mortgaged premises to W. E. Lee for a consideration of $10,000.00, wherein the sum of $3,333.33 was paid in cash and a purchase price mortgage given for the balance due and containing this clause: "This mortgage represents part of the purchase price due by the mortgagor to the mortgagee." On November 2, 1925, when the deed and purchase price mortgage were exchanged or delivered, plaintiff surrendered possession of the mortgaged premises to W. E. Lee. (b) The notes and mortgage of the defendant were each *past due* when assigned and delivered to the defendants and each of his assignors were thereby subject to all available equities. (c) That B. J. Kline, President and chief executive officer of Florida Land Holding Corporation had actual and constructive notice of plaintiff's interest in the mortgaged premises. The defendant on December 14, 1934, filed an answer to the replication to the affirmative answer of the defendant Florida Land Holding Corporation, the effect of which was to complete the issues tendered by the pleadings of the respective parties.

Testimony was taken before Laban G. Lively, Special Master, and the same was duly reported to the court with all exhibits attached as received in evidence, without recommendations as to a decree or decrees to be entered by the Court.

On May 24, 1937, on final hearing the Chancellor below found the equities of the cause to be with the plaintiff below and decreed a foreclosure of the mortgaged property for the sum of $3,699.44. An appeal was taken therefrom,

supersedeas bond given, transcript of record perfected and the defendant below assigns in this Court the final decree as reversible error on some seven or eight grounds, while plaintiff below assigns in this Court three cross assignments of error which call into question the amount or amounts found to be due the plaintiff on the W. E. Lee note and mortgage as expressed in the final decree. It appears that each party to the suit is dissatisfied with the final decree appealed from or some portions thereof.

The mortgage of the plaintiff, L. P. McMillen, is dated November 2, 1925, and on November 2, 1925, duly recorded in the public records of Hillsborough County, Florida, in Mortgage Book 150 at page 231, while the mortgage of the defendant, Florida Land Holding Corporation is dated January 31, 1925, and on February 2, 1925, duly recorded in the public records of Hillsborough County, Florida, in mortgage Book 210 at page 334, and the sole question for decision here is: Which of these two mortgages shall be paid first out of and from the moneys arising from the sale of the ten acres of land described in the plaintiff's bill of complaint? The evidence shows that plaintiff, on December 27, 1922, obtained from the owner of the fee simple title, W. E. Lee, a contract to buy the said ten acres of land for the sum of $10,000.00, and pursuant thereto made payments and *immediately* went into the actual and exclusive possession thereof where there was a growing orange grove, and the same was continuously cultivated until November 2, 1925, when she conveyed the property back to W. E. Lee for and in consideration for the sum of $10,000.00, receiving from him a cash payment in the sum of $3,333.33 and accepting a purchase price mortgage on the land conveyed to him for the remaining amount of the $10,000.00. She paid during the period she held under the contract of purchase to the said vendor W. E. Lee, the sum of $5,180.00,

leaving unpaid thereon on November 2, 1925, the sum of $4,820.00. The land was set to orange trees when she bought it in December, 1922. She made her payments to her vendor, W. E. Lee, and at no time between January 31, 1925, to November, 1925, did the Florida Land Holding Corporation, or either of its assignors or their agents, or either of them, demand or request that these payments due under the terms of the vendor's contract not be made or paid to her vendor, W. E. Lee.

The possession of the property was immediately delivered to W. E. Lee after the delivery of the deed and purchase price mortgage. It is true that the vendor's contract as made by W. E. Lee to L. P. McMillen on December 27, 1922, was outstanding and McMillen was in the open and exclusive possession of the ten acres when he (W. E. Lee) on January 31, 1925, made the mortgage now held by the Florida Land Holding Corporation. It was within the power of the assignors of the Florida Land Holding Corporation, after January 31, 1925, to demand of L. P. McMillen that no further payment under the vendor's contract be made to W. E. Lee and to demand and insist that such payments maturing thereunder be paid to appellant's assignor and this situation continued from January to November, 1925. If and while L. P. McMillen was in the possession thereof the claims and demands under the assignors of Florida Land Holding Corporation had been pressed and asserted and in so doing would have been forced to deal with W. E. Lee and L. P. McMillen. If these rights had been asserted after January 1st and before November 2nd, 1925, it is reasonable to assume that the conveyance to W. E. Lee would never have been made or the purchase price mortgage given which is now sought to be foreclosed. It was their duty to act and their failure so to do before innocent people became involved, renders

it just and right that they should not now be heard for their own wrongs and innocent parties should not suffer.

This Court had before it a similar set of facts in the case of Marion Mortgage Co. v. Grennan, 106 Fla. 913, 143 So. 761, when this Court said:

"Actual possession is constructive notice to all the world or anyone having knowledge of said possession, of whatever rights the occupants have in the land. Such possession when open, visible and exclusive, will put upon inquiry those acquiring any title to or a lien upon the land so occupied to ascertain the nature of the rights the occupants really, have in the premises. Carolina Portland Cement Company v. Roper, 68 Fla. 299, 67 So. 115; Tate v. Pensacola G. L. & Dev. Company, 37 Fla. 439, 20 So. 543; McAdams v. Wachab, 45 Fla. 482, 33 So. 702. This court also specifically held in the case of Crozier, et al., v. Ange, 85 Fla. 120, 95 So. 426, that 'where at the time property is mortgaged it is actually occupied by others than the mortgagor, the mortgagee is thereby put upon notice to inquire as to the rights of the occupants.' 19 R. C. L. 421, Sections 201 and 202.

"While a mortgagee is a 'purchaser' to the extent of his interest in the mortgaged property and where it appears that he is a *bona fide* purchaser for value and 'without notice of any secret unrecorded claim or interest' in such property, he will be protected. Warner v. Watson, 35 Fla. 402, 17 So. 654. There being, however, no charge of secrecy in the instant case the above rule does not apply especially where it is shown that the property at the time of the mortgage was occupied by others *than the mortgagor* under a contract for deed. If the mortgagee, though he does it passively, suffers another to purchase and expend money on land under an erroneous opinion of the title without making known his claims, he shall not afterwards be

permitted to exercise his legal rights against such purchaser. Hagan v. Ellis, 39 Fla. 463, 22 So. 727; Price v. Stratton, 45 Fla. 553, 33 So. 644; Coram v. Palmer, 63 Fla. 116, 58 So. 721. * * *

" * * * The rule is that where one of two persons must suffer loss, and by a stronger reason in cases where one misleads the other, he who is the cause or occasion of that condition by which the loss has been caused or occasioned ought to bear it. Skivesen v. Brown, et al., 101 Fla. 1384, 133 So. 564; Commerce Credit Company v. Parker, 101 Fla. 928, 132 So. 640; Continental Jewelry Company v. Weilbacker (La.) 136 So. 110; American Process Co. v. White Pressed Brick Co., 58 Fla. 116, 47 So. 942, 11 Ann. Cas. 1054. See also 10 R. C. L., pages 695 and 697, Sections 23 and 25. It is also a well recognized rule that where an estoppel is operative as between the original parties to the transactions it is also effective as to their *privies in contract;* and one who becomes a creditor of the party estopped after the estoppel arises, is likewise concluded thereby. 10 R. C. L. 837; 2 Pomeroy's Equity Jurisprudence, (3 Ed.) Section 804. As a general rule an assignee of a mortgage has all the rights thereunder that his assignor had but no other or greater right, and this is especially true if the assignment is made after maturity of the debt secured. 41 C. J. pages 690 and 696. * * *

" * * * It seems, however, that while a contract for the sale of land remains executory, and no deed has passed, that whatever rights remaining in the vendor may be the subject of a mortgage by him, though the terms of the mortgage given by the vendor cannot restrict the rights of the purchaser under the executory contract of sale. 41 C. J. 374. It also seems to be the rule that an *assignment* by the vendor of an executory contract for sale of real property vests in the assignee a lien upon the vendor's interest

in the property not exceeding the purchase money unpaid on the contract. 39 Cyc. 1664-1665."

See Williams v. Neeld-Gordon Co., 86 Fla. 59, 97 So. 315; McAdow v. Wachob, 45 Fla. 482, 33 So. 702.

It is contended that the appellant's (defendant's below) mortgage was prior to plaintiff's because it was recorded first; that the demand and collection of the amount due under the vendor's contract was immaterial because the amount was never paid, and that the mortgage of appellant having been recorded first, the legal presumption is that the same was superior to that of the appellee or plaintiff below. The fallacy of this reasoning is that appellant overlooks the important fact that plaintiff was in the actual and exclusive possession of the land and the possession should have been known to appellant because the land was set to orange trees and cultivated by plaintiff and her grantee. This possession speaks louder to the world as to ownership than the appellant's mortgage recorded February 2, 1925.

It is next contended that plaintiff surrendered her contract and accepted the Lee mortgage for her interest in the property, and the recitals in her deed to Lee, and in so doing subjected her interest in the property to defendant's (appellant's) mortgage. The answer is that the recitals in the deed from plaintiff to Lee is hardly material and actual and exclusive possession of the property was sufficient notice when appellant's mortgage was given and the lower Court in its decree properly disposed of the amount due under the vendee's contract and claims of appellant.

It is next contended that the quit claim deed from plaintiff to W. E. Lee when Lee held the fee simple title to the land, subject to appellant's mortgage, in law effected a merger and by operation of law the mortgage of the plaintiff was second to that of appellant. We have examined

the authorities cited to sustain this view, but doubt that this rule is the weight of authority.

It appears that substantial justice was awarded in the court below and for this reason the decree appealed from is affirmed.

WHITFIELD, BROWN and BUFORD, J. J., concur.

PER CURIAM.—After argument pursuant to re-hearing granted and further consideration of the record in this case, we find that it appears that the Chancellor's decree is based upon the assumption that the purchase price of the property involved (see our opinion filed herein on July 6, 1938) was $10,000.00 and we followed that assumption in our opinion, *supra*.

It appears, however, that there is room for grave doubt as to whether or not the final agreed purchase price was $10,000.00. It appears to us that there is evidence in the record to support the finding that the original contract between Lee and McMillen was that McMillen should pay Lee $10,000.00.

Two Thousand Five Hundred ($2500.00) Dollars was paid in cash. Five Thousand ($5000.00) Dollars of the balance was due to be paid in semi-annual instalments of $500.00 each. The payment of the remainder of the balance was not provided for in the contract. Before the first payment became due the parties amended the contract, as follows:

"This agreement is attached to and becomes a part of this Agreement. That W. E. Lee, for himself, his heirs, and assigns, agrees to accept as part payment hereof for the lot mentioned and described herein a note in the sum of $3250.00 to run five (5) years from date without interest. At end of five years, W. E. Lee agrees for himself, his heirs and assigns to accept a first mortgage on lot

herein mentioned and described in this agreement, in the sum of $3250.00 with interest at 6% payable in three annual payments, with the understanding that proceeds from fruit grown on this lot—as herein mentioned and described—shall be applied to the payment of the mortgage, excepting sufficient monies to pay for fertilizer, spraying and the doing of all other necessary work to this grove.

"In case there is not sufficient fruit to meet payments as they fall due, the party of the second part agrees to meet and pay the payments as they become due and payable."

That this reduced the purchase price to $9,000.00.

Then on February 10, 1923, the parties agreed on a discount of the $3250.00 note to $1400.00 plus 6% interest on that amount for five (5) years, viz.: $420.00, on the payment of $1000.00. This reduced the final purchase price to $2500.00 cash payment, $1000.00 paid at discount of $3250.00, $1820.00 note, $1820.00 on note discounted and $3250.00 note and mortgage to be given at end of five years, or a total of $8570.00.

If this was the real result of the transaction between the parties, and the agreed balance due when McMillen quitclaimed to Lee was $4820.00, then the difference between this sum $4820.00 and the final agreed purchase price $8750.00 was $3750.00, which McMillen had evidently paid to Lee instead of $5180.00 as found by the Chancellor. Lee paid McMillen $3,333.33.

So it is that if the final decree entered by the Chancellor is otherwise correct, and we agree that it is, and the above statement portrays the real facts, then McMillen is only entitled to a lien to secure the difference between $3750.00 and $3,333.33, or $316.67, with interest from November 2, 1925, to date.

The record is so unclear in regard to these matters that we think further testimony should be taken relative thereto

and, thereupon, this phase of the matter should be reconsidered by the Chancellor and that thereupon the decree should be modified, or not, pursuant to the Chancellor's findings of fact on this question.

It is, therefore, ordered that the decree be reversed insofar only as the matters herein referred to are involved and that the cause be remanded for further proceedings as herein indicated.

So ordered.

TERRELL, C. J., and WHITFIELD, BROWN, BUFORD and CHAPMAN, J. J., concur.