272 So.2d 841 (1973)
HUMBLE OIL & REFINING COMPANY, Appellant,
v.
George L. LAWS and Mossie E. Laws, Husband and Wife, et al., Appellees.
No. R-75.
District Court of Appeal of Florida, First District.
February 6, 1973.
G. Thomas Smith and Thomas A. Clark, of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Tampa, and R. Brownlee Eggart, Pensacola, for appellant.
Thomas N. Tucker, Pensacola, for appellees.
RAWLS, Judge.
Humble Oil & Refining Company appeals a final judgment cancelling an oil, gas and mineral lease it acquired from Thomas O. Fillingim and Hazel E. Fillingim, his wife. The subject final judgment also ordered the Fillingims to convey the land involved, pursuant to a contract of sale, to appellees. Humble is not concerned with the dispute between the Fillingims and the Laws,[1] but insists that its oil, gas and mineral lease should not have been cancelled.
The principle point on appeal is: Was possession by appellees of the land in dispute such as to put Humble on notice of an unrecorded contract of sale of said land *842 between the Fillingims, as sellers, and the Laws, as purchasers?
Facts most favorable to appellees are: In early 1970 the Fillingims and the Laws negotiated for the rental, sale and purchase of a certain tract of land. Mrs. Fillingim and Mrs. Laws were the primary negotiators. Mrs. Fillingim, a licensed real estate broker, drafted an agreement which was signed by both couples. The agreement described the land by proper legal description, set out rental terms and further provided:
"The parties of the first part [the Fillingims] agree to sell to the parties of the second part [the Laws] the same described land containing 189 acres more or less for $61,425 at 7% per annum.
"The down payment of $10,000 is agreed by both parties to be October 15, 1970. The first note is to be paid December 1, 1971 of $5,000 or more, including principal and interest and to continue thereafter until paid, without penalty.
"The parties of the first part agree to transfer by Deed the same rights of title, oil and mineral rights as the abstract states and describes. The parties of the second part agree to pay all the 1970 real estate taxes."
At the time of the execution of the above instrument, the Laws gave the Fillingims a check for $1,000 marked "land rent and option to buy." When Mr. Fillingim accepted the check, he shook hands with Mr. Law and stated: "As far as we're concerned, the property's yours. You can do whatever you want with it".
The Laws went into immediate possession of the land, limed and fertilized a part of it, planted 75 acres in soybeans and had 6 acres in permanent pasture. Oats and wheat were planted in the fall. An old shack on the property was rewired for electricity and was occupied by Mr. Laws from 30 to 45 days while he worked the land. They also cleared an area under a big magnolia tree for a future home site, seeded it with grass, and planted roses and azaleas. Extensive farm equipment owned by them was continuously on the property.
Some time prior to July 9, 1970, an agent for Humble left his calling card at the Fillingim's residence. Mrs. Fillingim called the agent who discussed with her his company's desire to lease the oil, gas and mineral rights on the subject land. Mrs. Fillingim advised that she didn't think they owned any mineral rights. Subsequently, the agent examined an abstract of the land and agreed to pay the Fillingims $3,350 (and other consideration dependent on certain contingencies) for an oil, gas and mineral lease. Mrs. Fillingim told the agent the property was "rented". An oil, gas and mineral lease between the Fillingims and Humble was executed and recorded.
Humble vigorously contends that its only possible notice of the Laws' interest in the subject land was their cultivation of same and the owner-seller's statement to its agent that the land was rented for one year. Further argument by Humble is that cultivation of the land without a continuous residence thereupon is not sufficient to put a lessee on notice of an unrecorded option or contract for sale, citing as its authority a Texas case.[2] It might well be that Texas law recognizes Humble's position, but it does not "hold water" in Florida. Actual possession is constructive notice to all the world of whatever rights the occupants have in the land. Such possession when open, visible, and exclusive, will put upon inquiry those acquiring any title to or a lien upon the land so occupied to ascertain the nature of the rights the occupants really have in the premises.[3] Humble, a prospective purchaser, having knowledge of the possession of the realty by the *843 Laws, as lessees, was required to inquire as to the full terms and conditions of their lease, including their right to purchase.[4] As related in the above facts, the exclusive possession by the Laws was more than adequate to put any person upon inquiry as to their interest in the lands occupied by them. This Humble did not do. Its agent did not visit the property or make any inquiry other than as reflected by the court-house records.
The judgment appealed is affirmed.
CARROLL, DONALD K., Acting Chief Judge, and WIGGINTON, J., concur.
NOTES
[1] Thomas O. Fillingim and Hazel E. Fillingim, husband and wife, and Humble Oil & Refining Company v. George L. Laws and Mossie E. Laws, husband and wife, Case No. R-73 (1 Fla.App., filed Mar. 31, 1972), pending.
[2] Jackson v. De Guerin, 124 Tex. 424, 77 S.W.2d 1041 (1935).
[3] Marion Mortgage Co. v. Grennan, 106 Fla. 913, 143 So. 761, 87 A.L.R. 1492 (1932); Florida Land Holding Corporation v. McMillen, 135 Fla. 431, 186 So. 188 (1938); Blackburn v. Venice Inlet Co., 38 So.2d 43 (Fla. 1949).
[4] Denco, Inc. v. Belk, 97 So.2d 261, 265 (Fla. 1957).