**In re Izell BLUNT, Raydeen Blunt, Debtors.**

**Izell BLUNT, Plaintiff,**

**v.**

**Reuben BRIGETY, Reuben Brigety, M.D., P.A., United States of America, State of Florida, Glen C. Henderson and Susan Henderson, Financial Management & Advisory Services, Inc., Metpath, Inc., Whittaker, General Medical, Stanley B. Gelman, P.A., Norrell Services, Inc., Thomas W. Brooks, III, Florida Physicians Insurance Reciprocal, Defendants.**

Bankruptcy No. 85–1049–BK–J–11.
Adv. No. 86–189.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Nov. 16, 1987.

Albert H. Mickler, G. Everett B. Williams, I, Jacksonville, Fla., for plaintiff.

Clinton W. Marrs, Washington, D.C., for U.S.

Donald L. Braddock, Jacksonville, Fla., for Reuben E. Brigety and Thomas W. Brooks, III.

Louise Toole Ramsey, Tallahassee, Fla., for State of Fla.

Gelman, McKeel & Gordon, P.A., Jacksonville, Fla., for Stanley B. Gelman, P.A., and Financial Management & Advisory Services, Inc.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

The plaintiff has filed motion for summary final judgment. The United States has opposed that motion and has filed a cross-motion for summary judgment against the plaintiff. Defendants Reuben E. Brigety, Reuben E. Brigety, M.D., P.A., and Thomas W. Brooks, III, have joined the plaintiff in opposition to the United States and have filed their own cross-motion for summary judgment against the United States. All of the parties agree that for purposes of these motions, there are no genuine issues of material facts.

## FINDINGS OF FACT

1. On or about May 27, 1981, Izell Blunt and Reuben Brigety executed an "Agreement of Dissolution of Partnership Between Izell Blunt, M.D., and Reuben E. Brigety, M.D., Regarding Investment Properties Now Held Jointly and Individually Which are Currently Under the Management of B & R Management, Inc." Paragraph 1 of the Agreement provides that "Reuben E. Brigety, M.D. acknowledges all properties [therein described] ... will be owned by Izell Blunt, M.D. at the execution of this agreement." This Agreement was not recorded in the public records.

2. As consideration for the Agreement, Izell Blunt executed two Mortgage Notes dated June 3, 1981, payable to Reuben E. Brigety, M.D., P.A., in the amount of $5,000 and $10,000 respectively. Izell Blunt executed and delivered to Reuben Brigety a mortgage deed dated June 4, 1981, securing the two mortgage notes as well as a third mortgage note dated July 25, 1980, payable to Reuben E. Brigety, M.D., P.A., in the amount of $100,000. The mortgage deed and notes were recorded on June 5, 1981.

3. On June 4, 1984, the United States made an assessment against Reuben E. Brigety, M.D., P.A., for unpaid Federal Unemployment Tax Act (FUTA) taxes for the year 1982. On June 18, 1984, the United States made an assessment against Reuben E. Brigety, M.D., P.A., for unpaid Federal Insurance Contribution Act (FICA) taxes for the calendar quarterly periods ending September 30, 1982, December 31, 1982, and for all four quarters of 1983. The balance of these assessments is $11,174.69 as of April 13, 1987, plus interest and costs as provided by law. A notice of federal tax lien was filed on September 13, 1984, with the Clerk of the Circuit Court, Duval County, Jacksonville, Florida.

5. On July 9, 1984, the United States made an assessment against Reuben E. Brigety, M.D., P.A., for unpaid FICA taxes for the calendar quarterly period ending July 9, 1984, the unpaid balance of which is $622.21 as of April 13, 1987, plus interest and costs as provided by law. A notice of federal tax lien was filed with the Clerk of the Circuit Court, Duval County, Jacksonville, Florida, on November 9, 1987.

6. On September 10, 1984, the United States again made an assessment against Reuben E. Brigety, M.D., P.A. This time the assessment was for unpaid FUTA taxes for 1983, the unpaid balance of which is $1,818.88 as of April 13, 1987, plus interest. A notice of federal tax lien was filed in Duval County on January 22, 1985.

7. On March 28, 1985, the United States made another assessment against Reuben E. Brigety, M.D., P.A., for unpaid FICA taxes for the last three quarters of 1984, the unpaid balance of which is $978.19 as of April 13, 1987, plus interest. A notice of federal tax lien was filed on May 6, 1987.

8. On or about November 17, 1986, Reuben E. Brigety, Barbara Brigety, Thomas W. Brooks, III, and Rhoda S. Brooks executed and delivered to Izell Blunt a quitclaim deed to the real property which is the subject of this adversary proceeding. The quitclaim deed was recorded on November 19, 1986.

### ISSUES

The United States has argued that it made a proper title search and that no deed evidencing a transfer of Brigety's interest in the property was ever recorded. Accordingly, the government argues that it is entitled to prevail under Section 695.01, *Florida Statutes*, as a matter of law.

On the other hand, Blunt and the other parties have argued that the United States had actual, if not implied, notice of the transfer due to the fact that Blunt remained in actual, obvious and open possession of the property, and secondly, that three mortgages suggesting a transfer of the property are reflected in the chain of title.

### CONCLUSIONS OF LAW

1. In *Aquilino v. United States*, 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960), the Supreme Court announced that the priority of federal tax liens should be determined by state law. Since the property in question is located in Florida, that state law will be applied. In this regard, Section 695.01, *Florida Statutes*, provides:

> (1) No conveyance, transfer or mortgage of real property, or any interest therein, nor any lease for a term of one year or longer, shall be good and effectual in law or in equity against creditors or subsequent purchasers for a valuable consideration *and without notice*, unless the same be recorded according to law.... [Emphasis added].

2. In this case, there is no question that the United States properly filed its notice of tax liens prior to the recording of the quitclaim deed. Under ordinary circumstances, this would be sufficient to entitle the United States to prevail. However, the plaintiff has argued that there were sufficient facts to raise a duty of inquiry on the part of the government so as to charge them with constructive notice of the transfer.

3. In order to charge a person with notice of information which might have been learned upon inquiry, the circumstances must be such as should reasonably suggest inquiry. *Chatlos v. McPherson*, 95 So.2d 506 (Fla.1957). This determination is generally for the trier of fact. *Sapp v. Warner*, 105 Fla. 245, 143 So. 648 (1932) (on rehearing).

Plaintiff's first argument is that the duty to inquire further was triggered by the open and exclusive possession of the property by Blunt. In support of his argument, plaintiff cites *Florida Power and Light Co. v. Rader*, 306 So.2d 565 (Fla. 4th DCA 1975) (the presence of power lines over the property reasonably suggested that an easement for that right existed); *Waldorff Insurance and Bonding, Inc. v. Eglin National Bank*, 453 So.2d 1383 (Fla. 1st DCA 1984) (subsequent purchaser of condominium unit took title subject to the equitable interests of the occupant of the condominium); and *Humble Oil and Refining Co. v. Laws*, 272 So.2d 841 (Fla. 1st DCA 1973) (renter-in-possession with option to purchase entitled to priority over subsequent purchaser of mineral rights). Plaintiff's argument must fail, however, because the use and possession of the property was not inconsistent with the record title, the record title having indicated that Blunt held a half interest in the property along with Reuben E. Brigety, M.D., P.A. Hence, this Court holds that the use and possession of the property by Blunt did not constitute sufficient indication of an adverse claim against Brigety so as to impose constructive notice on the government.

*See In re McCall,* 58 B.R. 54, 56 (Bkrtcy.M. D.Fla.1986).

■ Plaintiff's second argument, asserted by the several defendants on his behalf, is much more compelling. Their argument is that the three mortgages executed in favor of Brigety and recorded along with the mortgage deed prior to the perfecting of the tax liens were sufficient to raise the duty of inquiry on the part of the government. Specifically, they argue that the language contained in the notes wherein Blunt covenanted that he was "indefeasibly seized of said land in fee simple" should have compelled the United States to inquire further. With this the Court agrees, for not only do the mortgage notes contain the fee simple covenant, they also indicate that the entire parcels were encumbered by the mortgages, not just Blunt's half interest.

These two facts should have at least led the United States to inquire further into whether there were any outstanding interests in the property. Having failed to do so, the government cannot now claim to have a superior interest in the property.

4. Having determined that the federal tax liens are not entitled to priority over Blunt's equitable interests, the Court must now determine whether the United States has any interest in Blunt's property at all. For this determination, the Court looks to *Hull v. Maryland Casualty Co.,* 79 So.2d 517 (Fla.1955), a case directly on point.

In *Hull,* the Court was faced with a situation where a deed remained unrecorded for twenty-three years and during that period judgments were entered and recorded against the grantor of the deed. In dealing with that problem, the Court interpreted Section 695.01, *Florida Statutes,* and stated:

> "The lien of a judgment attaches only to the land of the judgment debtor, ... (citations omitted), and if the record title is in the judgment debtor but the true or equitable title is in a third person, such rights of the third person as against the judgment creditor are superior when the true owner is not estopped to assert true title ... (citations omitted). The true owner is estopped to assert his title

against bona fide purchasers who rely upon the record title and are *without notice* of the interest of the true owner."

79 So.2d at 518. [Emphasis added.]

The Court went on to note:

> "... [T]he liens of the judgments, or any of them, under which appellee claims, could not have attached to the interest of the vendor, because he had no interest to which such liens are capable of attaching."

79 So.2d at 518.

■ The facts in *Hull* are very similar to those in this case: there is a division between the legal and equitable title due to the failure to record a deed, there are judgment liens being asserted against the grantor, and the creditor is seeking to assert the priority of its lien against the equitable title holder. Applying the rationale of *Hull,* this Court finds that the liens which the United States has asserted against Brigety could not have attached to the property in question because Brigety had no interest in the property to which the liens could have attached. Accordingly, this Court holds that the United States has no interest in this property.

5. The United States' final argument that the parties intended to execute an agreement for deed is without merit, this Court finding that no such arrangement was ever contemplated by the parties.

6. The Court will enter a separate order consistent with these findings granting plaintiff Izell Blunt's motion for summary judgment against the United States, granting defendants Brigety, Brigety, P.A., and Brooks' cross-motion for summary judgment against the United States and denying motion of the United States for summary judgment against Blunt.