**Mary Jane PROWSE, Appellant,**

v.

**Robert W. WALTERS, et al., Appellees.**

**No. 13–94–368–CV.**

Court of Appeals of Texas,
Corpus Christi.

Nov. 21, 1996.

Rehearing Overruled Jan. 9, 1997.

Robert L. Ramey, Corpus Christi, for appellant.

Billy H. Davis, Jr., Waco, for appellee.

Before SEERDEN, C.J., and DORSEY and FEDERICO G. HINOJOSA, Jr., JJ.

## OPINION

SEERDEN, Chief Justice.

■ Mary Jane Prowse appeals from a take-nothing summary judgment rendered against her and in favor of Robert W. Walter, Jacqueline Torell, and Thomas Dewane, appellees, denying Prowse's action to quiet title to an asserted 42.5% interest in property which appellees claimed by purchase at an IRS tax lien foreclosure sale.[1] We reverse and remand.

Prowse claims as her source of title to the property several instruments, including a 1950 deed, a 1982 declaration of trust listing George Prowse, her late husband, as a beneficiary of the property interest in a real estate note and deed of trust on the property, and a 1992 re-conveyance to Prowse. Appellees claim title to the property through a 1993 foreclosure of an IRS tax lien against the property of the Nicholson estate and trust for failure to pay estate taxes.

Most of the relevant facts concerning the various transfers are undisputed. T. Buford Nicholson acquired a piece of property on Padre Island, Nueces County, Texas, in 1949, and conveyed an undivided half interest in that property to George Prowse by a 1950 warranty deed, which was left unrecorded until 1992. In 1975 Nicholson conveyed, and recorded the conveyance of, a half interest in the property to a trust established for the benefit of himself and his wife (the Nicholson trust), of which he served as trustee.

In 1982, Nicholson conveyed, and recorded the conveyance of, the property to Padre Island Limited Partnership, taking a real estate note and a deed of trust against the property as security for payment of the note. In addition, as a part of that transaction, Nicholson executed, but did not file for record, a "declaration of trust" whereby he acknowledged a 42.5% interest in the property owned by Prowse.

T. Buford Nicholson died on August 24, 1983, leaving his entire estate to the Nicholson trust. On February 3, 1987, the successor trustee of the Nicholson trust (William B. Nicholson) foreclosed on the deed of trust and purchased back the property for the unpaid balance of the real estate note, recording a Trustee's Deed to "William B. Nicholson, Trustee."

On February 15, 1991, the IRS assessed a federal tax lien against the Nicholson estate and the Nicholson trust for failure to pay estate taxes. Glenda Hudgens, the IRS revenue officer charged with collecting taxes due from the Nicholson estate, testified by deposition that in January of 1992, she received a form from William B. Nicholson indicating that the Nicholson estate and trust owned only a 42.5% interest in the property, and she called Prowse's widow requesting information about the deed record which Hudgens could not find. On February 10, 1992, Prowse's son visited Hudgens and provided copies of the unrecorded deed and declaration of trust showing a transfer to Prowse. On that same day the IRS filed for record a Notice of Federal Tax Lien with the Nueces County clerk's office.

In September and November of 1992, Prowse then recorded the 1950 deed and the trustee of the Nicholson trust conveyed and had recorded a new deed to Prowse reflecting a 42.5% interest in the property. However, notwithstanding notice of the prior deed and filing of the prior and subsequent deeds, the IRS sold the property at auction on February 18, 1993, to appellees and delivered a quitclaim deed on August 25, 1993. Appellees, moreover, had actual notice of Prowse's claim to the property before the IRS foreclosure sale, as well as constructive notice by virtue of the deeds which had been recorded prior to sale.

Nevertheless, appellees moved for summary judgment defending their title to the property, and the trial court granted sum-

1. We note that, although 26 U.S.C. § 7426 generally provides the exclusive remedy for third-party civil actions against the United States for wrongful levy or sale of property subject to a tax lien, a third-party is not thereby limited to pursuing a claim against the United States for wrongful levy and sale of property, but can maintain a quiet title action under state law against the subsequent purchaser. *World Marketing, Ltd. v. Hallam,* 608 F.2d 392 (9th Cir.1979). Accordingly, the present action to quiet title was properly brought against appellees in state court.

mary judgment in their favor, denying Prowse's claim to the property.

Prowse complains by her first point of error that the trial court erred in granting summary judgment because the IRS had actual notice of her interest in the property prior to filing notice of the federal tax lien, and by her second and third points of error that the appellees had actual notice of her interest in the property prior to their purchase at the IRS foreclosure sale.

A movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true, doubts will be resolved in the non-movant's favor, and every reasonable inference will be indulged in the non-movant's favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

The present case is governed by the legal question of the priority of the IRS tax lien as against the unrecorded interest claimed by Prowse. As our recitation of the facts of this case reveals, there is general agreement concerning the relevant facts underlying the question of title. The recorded chain of title prior to the IRS assessment and notice of tax lien reflects that Nicholson purchased the property in 1949, that he conveyed a half interest to his family trust in 1975, that he then conveyed the property to Padre Island Limited Partnership in exchange for a real estate note and deed of trust, and that, subsequent to his death in 1983, the Nicholson trust, as sole heir to Nicholson's estate, foreclosed on the deed of trust and regained title to the property. There is no recorded conveyance to Prowse prior to September 1992.

■ With regard to tax liens generally, we look to state law to determine the taxpayer's interest in the property in question and to federal law to determine the priority of competing interests in that property. *See Aquilino v. United States*, 363 U.S. 509, 512–14, 80 S.Ct. 1277, 1280, 4 L.Ed.2d 1365 (1960); *United States v. Purcell*, 798 F.Supp. 1102, 1114 (E.D.Penn.1991), *aff'd*, 972 F.2d 1334 (3rd Cir.1992); *Garner v. Internal Revenue Service*, 632 F.Supp. 390 (S.D.Tex.1986). Accordingly, whether a taxpayer has any right to property against which a federal tax lien is assessed is a question determined by state law. *Prewitt v. United States*, 792 F.2d 1353, 1355 (5th Cir.1986).

In the present case, there are two possible sources for the IRS tax lien against property of the Nicholson estate and the Nicholson trust for failure to pay its estate tax liability: the general federal tax lien, and the special estate tax lien.

## A. General Federal Tax Lien

■ A general federal tax lien attaches to the property of a delinquent taxpayer under the following circumstances:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

26 U.S.C. § 6321.

However, the general federal tax lien imposed under section 6321 is dependent upon properly filing notice thereof, such that "[t]he lien imposed by section 6321, shall not be valid as against any purchaser ... until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary." 26 U.S.C. § 6323(a); *see United States v. Blakeman*, 997 F.2d 1084, 1088 (5th Cir.1992). Section 6323(f) generally provides for filing of notice of a federal tax lien against real property according to State filing statutes.[2]

■ Accordingly, the IRS must file notice of the tax lien before it can be perfected.

---

2. In Texas, notices of federal tax liens are filed under the provisions of Tex.Prop.Code Ann. § 14.001 *et seq.* (Vernon Supp.1997). Specifically, notice of a federal tax lien upon real property is filed with the county clerk of the county where the real property subject to the lien is situated. Tex.Prop.Code Ann. § 14.002(b) (Vernon Supp. 1997).

When, under the authority of the general tax lien, the IRS gives notice of levy upon the property of the delinquent taxpayer, such property then comes into the constructive possession of the government. *United States v. National Bank of Commerce*, 472 U.S. 713, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985).[3]

Moreover, for purposes of determining priority between the IRS and a third-party purchaser prior to perfection of the tax lien, the federal statute defines "purchaser" as "a person who, for adequate and full consideration in money or money's worth, acquires an interest (other than a lien or security interest) in property which is valid under local law against subsequent purchasers without actual notice." 26 U.S.C. § 6323(h)(6).

 Accordingly, when under state law an unrecorded transfer of the property would not defeat the title of a subsequent purchaser, it likewise will not prevent the general tax lien from attaching to the property or interfere with the government's right to seize and sell it. *See United States v. V & E Engineering & Construction Co.*, 819 F.2d 331, 335–36 (1st Cir.1987); *Prewitt*, 792 F.2d at 1355; *Purcell*, 798 F.Supp. at 1114; *Garner* (unrecorded security interest did not take priority over subsequently filed notice of tax lien). Moreover, an interest "valid under local law against subsequent purchasers without actual notice" indicates that the interest must be able to prevail against all hypothetical subsequent purchasers, regardless of whether or not there are any actual subsequent purchasers against whom such interest would or would not prevail. *V & E Engineering*, 819 F.2d at 335.

 A literal reading of sections 6321 and 6323, especially the definition of a purchaser as limited to one whose validity is tested only against a hypothetical "subsequent purchaser without actual notice," might suggest that the transferee holder of an unrecorded interest has no protection against the imposition and attachment of a federal tax lien, even when the IRS has actual knowledge of the unrecorded interest. However, federal cases suggest that actual or constructive notice to the IRS of a prior unrecorded transfer is sufficient to defeat the attachment or perfection of its tax lien, if it would have been sufficient to defeat the interests of a subsequent purchaser under state law. *See In re Blunt*, 80 B.R. 234 (Bkrtcy M.D.Fla.1987); *see also Prewitt*, 792 F.2d at 1359.[4] In particular, oral notice to an agent of the IRS is sufficient to defeat reliance on the recording statute and to impute to the IRS knowledge of an unrecorded transfer. *See Purcell*, 798 F.Supp. at 1114. These cases are consistent with the central idea that state law governs the question of whether the taxpayer has any underlying interest in the property on which the IRS seeks to attach and perfect its tax lien. *See Aquilino*, 80 S.Ct. at 1280; *Prewitt*, 792 F.2d at 1355.

The Texas Property Code provides for the recording of real property transfers and limits the validity of unrecorded instruments as follows:

(a) A conveyance of real property or an interest in real property or a mortgage or deed of trust is void as to a creditor or to a subsequent purchaser for a valuable consideration without notice unless the instrument has been acknowledged, sworn to, or proved and filed for record as required by law.

(b) The unrecorded instrument is binding on a party to the instrument, on the parties' heirs, and on a subsequent purchaser who does not pay a valuable consid-

---

3. 26 U.S.C. § 6331 provides the procedure for the IRS to levy upon the property of a delinquent taxpayer or upon property subject to a tax lien. After the foreclosure sale, the IRS deed of real property then operates as a conveyance of all the right, title, and interest the delinquent taxpayer had at the time the lien attached. 26 U.S.C. § 6339(b)(2).

4. With regard to a related question concerning the priority of an unrecorded security interest, there is a split of authority between the federal

circuits as to whether actual knowledge by the IRS prior to filing its tax lien deprives the tax lien of priority. *Compare United States v. Ed Lusk Constr. Co.*, 504 F.2d 328, 331 (10th Cir. 1974) (tax lien is not entitled to priority), *with Dragstrem v. Obermeyer*, 549 F.2d 20, 25–27 (7th Cir.1977) (government's knowledge of competing nonfederal interest is irrelevant). The Fifth Circuit has avoided endorsing either position. *See Metropolitan National Bank v. United States*, 901 F.2d 1297, 1301 n. 1 (5th Cir.1990).

eration or who has notice of the instrument.

(c) This section does not apply to a financing statement, a security agreement filed as a financing statement, or a continuation statement filed for record under the Business & Commerce Code.

Tex.Prop.Code Ann. § 13.001 (Vernon 1984 & Vernon Supp.1997). As we recently said in *Burris v. McDougald*, 832 S.W.2d 707, 709 (Tex.App.—Corpus Christi 1992, no writ) (citations omitted):

> In Texas the recording of a deed is not essential to an effective conveyance of title. An unrecorded conveyance is binding on the parties to the instrument, the parties' heirs, and all of those who have knowledge of the conveyance. The law requires the recording of title to land for the protection of innocent purchasers and creditors.

■ Accordingly, under Texas law, actual or constructive notice to a subsequent purchaser will generally validate the unrecorded conveyance as between the prior and subsequent purchasers.

■ The recordation law in Texas was thus meant to protect innocent purchasers and creditors without notice of the prior transfer from being injured or prejudiced by their lack of knowledge of the competing claim. However, a valid transfer of title is not dependent upon recordation of the deed, nor was the statute meant to deprive an unrecorded transferee of his property interest when all parties to the subsequent transfer are aware of the prior claim. Given the parameters under which the prior unrecorded transfer would be valid under Texas law, we hold that sections 6321 and 6323 of the federal statute do not confer on the IRS the power to destroy that property interest with full knowledge of its existence prior to filing notice of the tax lien.

In the present case, the IRS had actual notice of the prior transfer before it filed notice of its tax lien against the property. Accordingly, standing in the same general position as a subsequent purchaser with actual notice of the prior transfer, the IRS could not perfect its general federal tax lien against property that had been validly trans-

ferred to Prowse. Neither are the appellees, who had both actual and constructive notice before they purchased at the foreclosure sale, "innocent purchasers" entitled to protection under Texas law. *Burris*, 832 S.W.2d at 709.

B. Special Estate Tax Lien

■ Under 26 U.S.C. § 6324(a)(1), "the estate tax ... shall be a lien upon the gross estate of the decedent for 10 years from the date of death." The value of the gross estate shall include the value of all property to the extent of the interest therein of the decedent at the time of his death. 26 U.S.C. § 2033. *See Blakeman*, 997 F.2d at 1088. 26 U.S.C. § 6324(a)(2) further explains the nature of the estate tax as follows:

> If the estate tax imposed by chapter 11 is not paid when due, then the spouse, transferee, trustee ... or beneficiary, who receives, or has on the date of the decedent's death, property included in the gross estate ... to the extent of the value, at the time of the decedent's death, of such property, shall be personally liable for such tax. Any part of such property transferred by (or transferred by a transferee of) such spouse, transferee, trustee, surviving tenant, person in possession, or beneficiary, to a purchaser or holder of a security interest shall be divested of the lien provided in paragraph (1) and a like lien shall then attach to all the property of such spouse, transferee, trustee, surviving tenant, person in possession, or beneficiary, or transferee of any such person, except any part transferred to a purchaser or a holder of a security interest.

However, unlike the general tax lien, the IRS cannot "perfect" its estate tax lien by filing notice, but must actually levy upon the property, and until the IRS makes such a levy under 26 U.S.C. § 6331, the taxpayer is free to sell or encumber the property. Levy in effect perfects the estate tax lien and freezes the rights of the parties as of that time. *United States v. Rotherham*, 836 F.2d 359, 363–64 (7th Cir.1988); *see also* 47B C.J.S. *Internal Revenue* § 1128 (1996).

■ In the present case, because the property included in the gross estate upon

which the section 6324 lien attaches includes only the property belonging to the decedent at the time of his death, and his interest in the property is a question of state law, we look to Texas law to determine whether Nicholson had a valid interest in the entire property at the time he died. As we discussed with regard to the attachment of the general federal tax lien, here too actual notice validates the prior unrecorded transfer and prevents the special estate tax lien from being enforced against property that was not a part of the gross estate of the decedent at the time he died or at the time of the attempted levy.

We conclude that the trial court erred in granting summary judgment for the appellees, because it appears from the present summary judgment record that actual notice to the IRS of the unrecorded transfer to Prowse prevented the IRS from perfecting its lien against the property interest that it purported to transfer by foreclosure sale. Appellant's first three points of error are sustained.

We need not address appellant's remaining points of error, as they are not dispositive to the present appeal. *See* Tex.R.App.P. 90(a).

We REVERSE the judgment of the trial court and REMAND this case for trial.