Donna FLETCHER, Appellant,

v.

David MINTON, Appellee.

No. 05–05–01023–CV.

Court of Appeals of Texas,
Dallas.

March 22, 2007.

*rev'd and remanded,* 156 S.W.3d 574 (Tex. 2005).

James Andrew Bench, Scott, Walker & Bench, Greenville, for Donna Fletcher.

Dennis Davis, Scott Allan Cornuaud, Law Office of Scott A. Cornuaud, Greenville, for David Minton.

Before Justices WHITTINGTON, FITZGERALD, RICHTER.

## OPINION

Opinion by Justice RICHTER.

This case involves conflicting claims to two tracts of land. In six issues, appellant Donna Fletcher challenges the legal and factual sufficiency of the evidence to support the trial court's judgment that she was not a bona fide purchaser as to either tract. Because we conclude that Fletcher had notice of competing claims to the land and was therefore not a bona fide purchaser, the judgment of the trial court is affirmed.

### BACKGROUND

A. *Multiple Conveyances of the Same Real Property.*

Wallace Salls was the record owner of a 12.56 acre parcel of real property in Hunt County, Texas. In October 1984, Salls sold two adjoining tracts from the parcel. Tract I, consisting of 3.675 acres, was sold to Paula Malecek and her husband for $14,700. Tract II, consisting of 3.676 acres was sold to David Minton and his wife for $14,704. Both sales occurred pursuant to a contract for deed between Salls and the respective purchasers. Neither contract for deed was recorded, but other than the delivery of the deed, both Minton and Malecek contend that the contracts were fully performed.

In September 1994, Salls sold the property again. This sale involved the entire 12.56 acre parcel, including the two tracts previously conveyed to Minton and Malecek. Shannon Cook, the purchaser of the entire parcel, did not record the deed until 1997. In 1999, Cook sold the 12.56 acre parcel to Fletcher. The general warranty deed Fletcher recorded bears the notation "Drafted without Title Examination."

Malecek and Salls were involved together in various business ventures at the time Malecek purchased the property from Salls. An attorney named Robert Crouch handled all legal matters for both Malecek and Salls, including the drafting of the contract for deed for tract I. Crouch also drafted the deeds when the property was conveyed to Cook and Fletcher. Crouch is now deceased. Salls filed bankruptcy sometime prior to 1989, and no one has been able to locate him for a number of years.

B. *Multiple Claims to the Same Real Property.*

Fletcher filed a lawsuit against Minton seeking to quiet title to tracts 1 and 2. Minton denied Fletcher's allegations of ownership and asserted that he had dispossessed the owner of tract I by adverse possession, and owned tract II pursuant to his contract for deed with Salls. Malecek intervened in the lawsuit and asserted that she was the owner tract I. Fletcher subsequently amended her petition to assert that if either Malecek or Minton was awarded possession, she was entitled to reimbursement of the property taxes she paid on the property. Although Fletcher did not plead that she was a bona fide purchaser, the issue was tried by consent. The case was tried to the court without a jury. After conclusion of the trial, the

trial judge signed a judgment holding: 1) Malecek is the owner of tract I; 2) Minton is the owner of tract II; and 3) Fletcher is entitled to reimbursement from Malecek for ad valorem taxes paid on tract I. It is from the entry of this judgment that Fletcher now appeals.

### STANDARD OF REVIEW

On appeal, Fletcher challenges the legal and factual sufficiency of the evidence supporting the judgment. In reviewing a factual sufficiency challenge, we examine all the evidence and set aside a finding only if the evidence is so weak or the finding so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986) (per curiam). If any probative evidence supports the factual finding, it must be upheld. *Bernal v. Chavez*, 198 S.W.3d 15, 18 (Tex.App.-El Paso 2006, no pet.). When we review the findings for legal sufficiency, we consider only the evidence and inferences tending to support the finding, and disregard all of the evidence and inferences to the contrary. *Catalina*, 881 S.W.2d at 297. We uphold the finding if it is supported by more than a scintilla of evidence. *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex.1995).

### APPLICABLE LAW

The Texas Property Code provides for the recording of real property transfers and limits the validity of unrecorded instruments as follows:

(a) A conveyance of real property ... is void as to a creditor or to a subsequent purchaser for a valuable consideration without notice unless the instrument has been acknowledged, sworn to, or proved and filed for the record as required by law.

(b) The unrecorded instrument is binding ... on a subsequent purchaser who does not pay a valuable consideration or who has notice of the instrument.

TEX. PROP.CODE ANN. § 13.001 (Vernon 2006). Thus, an unrecorded conveyance is binding on those who have knowledge of the conveyance. *Burris v. McDougald*, 832 S.W.2d 707, 709 (Tex.App.-Corpus Christi 1992, no writ). A person who acquires property in good faith, for value, and without notice of any third-party claim or interest is a bona fide purchaser. Status as a bona fide purchaser is an affirmative defense to a title dispute. *Madison v. Gordon*, 39 S.W.3d 604, 606 (Tex.2001).

Notice will defeat the protection otherwise afforded a bona fide purchaser. *City of Richland Hills v. Bertelsen*, 724 S.W.2d 428, 429 (Tex.App.-Fort Worth 1987, no writ). "Notice" is broadly defined as information concerning a fact actually communicated to a person, derived by him from a proper source, or presumed by law to have been acquired. *Flack v. First Nat'l Bank*, 148 Tex. 495, 226 S.W.2d 628, 631 (1950). Notice may be actual or constructive. *Id.* Actual notice results from personal information or knowledge, as well as those facts which reasonable inquiry would have disclosed. Constructive notice is notice the law imputes to a person not having personal information or knowledge. *Madison*, 39 S.W.3d at 606; *Flack*, 226 S.W.2d at 631–632.

A purchaser of land is charged with constructive notice of all claims of a party in possession of the property that the purchaser might have discovered had he made proper inquiry. *Apex Financial Corp. v. Garza*, 155 S.W.3d 230, 234 (Tex. App.-Dallas 2004, pet. denied). This duty to ascertain the rights of a party in possession of the property arises when the possession is open, visible, exclusive, and un-

equivocal. *Id. see also, Madison,* 39 S.W.3d at 606.

## APPLICATION OF LAW TO FACTS

### A. *Tract I.*

■ Three parties claimed ownership of tract I: Malecek, who claimed ownership as a result of the purchase from Salls evidenced by the unrecorded contract for deed; Minton, who claimed ownership through adverse possession; and Fletcher, who claimed ownership as a result of the purchase from Cook evidenced by the general warranty deed. In her second issue, Fletcher claims that there is no evidence or insufficient evidence to support the trial court's finding that Minton notoriously used and occupied tract I since 1990. In her fifth issue, Fletcher argues that the evidence is legally and factually insufficient to support the trial court's finding that Malecek is the owner of tract I. Both issues are germane to Fletcher's overall assertion that she was a bona fide purchaser of tract I. There is no dispute concerning Fletcher's purchase of the property in good faith and for value. Thus, the bona fide purchaser inquiry centers on whether Fletcher had actual or constructive notice of any of the competing claims to the property. *See Madison,* 39 S.W.3d at 606. The absence of actual or imputed knowledge is critical to the preservation of the bona fide purchaser shield. *Carter v. Converse,* 550 S.W.2d 322, 329 (Tex.Civ.App.-Tyler 1977, writ ref'd n.r.e.). The trial court did not expressly conclude that Fletcher was not a bona fide purchaser. The trial court did find, however, that Fletcher, through her agent, had constructive, if not actual notice of Minton's claims to both tracts at the time she purchased the property. We agree, and therefore reject Fletcher's assertion that the trial court's determination was error because she was a bona fide purchaser.

■ Fletcher testified that she did not recall the purchase price of the property. Although she owns other property near the property at issue in this suit, she claimed that she never noticed mobile homes on the property she purchased. Fletcher further testified that she did not inspect the property prior to her purchase. Her attorney Crouch handled the legal documentation of the transaction. Fletcher's agent and ex-husband Max also assisted Fletcher with the purchase. No one challenges the fact that Max was Fletcher's agent acting for Fletcher's benefit and within the scope of his agency. Therefore, any notice or knowledge Max had about competing claims to the property is imputed to Fletcher. *See Kirby v. Cruce,* 688 S.W.2d 161 (Tex.App.-Dallas 1985, writ ref'd n.r.e.). Before Fletcher purchased the property, Max visited the property and spoke with Minton on at least one, perhaps two occasions. Minton lived on the property at the time. Although there is no explanation in the record about why Max visited Minton, it is reasonable to infer that the visit resulted from knowledge or suspicion that Minton occupied or possessed the property. Minton testified that when Max visited him, he told Max that Malecek owned tract I. Malecek testified that she was on the property when Max was there asking Minton who owned the property. When Max was asked if he knew that Minton occupied tract II and used tract I, he admitted that he had seen Minton "go in and out of there." Max also observed that there were two or three mobile homes and some cows on the property.

■ Max also testified about whether a title search had been done before Fletcher purchased the property. At one point Max testified that Crouch performed a title search, but he was not sure if it was in writing. Nonetheless, Max acknowledged

that he was aware that the property was once owned by Salls. Max later testified that he did see the title search, but it did not reflect that there were any prior owners. The general warranty deed evidencing Fletcher's purchase of the property expressly states that there was no title examination. We need not resolve these inconsistencies, because it is within the sole province of the fact finder to assess the credibility of the witnesses and the weight to be given their testimony. *See Clancy v. Zale Corp.*, 705 S.W.2d 820, 826 (Tex.App.-Dallas 1986, writ ref'd n.r.e.). We assume that the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so. *See In re JFC*, 96 S.W.3d 256, 266 (Tex.2002). Based on our review, we cannot conclude that the evidence is insufficient to support the finding that Fletcher, through her agent Max, had constructive if not actual notice of a conflicting claim to the property.

Malecek also argues that Fletcher had notice through her attorney Crouch. Fletcher responds that any knowledge Crouch may have had can not be imputed to her because the knowledge was gained prior to their attorney-client relationship. Because we uphold the trial court's finding that Fletcher had notice through her other agent Max, we need not determine whether Fletcher also had notice through her attorney.

■ Although she concedes that it is not the critical issue, Fletcher also challenges the legal and factual sufficiency of the trial court's finding that Minton openly and notoriously used and occupied tract I since 1990. We agree that the issue is not critical, but note that Minton's open use and occupation of the property is pertinent to whether Fletcher had notice of any competing claims. The phrase "open and notorious" is most typically utilized in the context of adverse possession. *See e.g., Orsborn v. Deep Rock Oil Corp.*, 153 Tex. 281, 267 S.W.2d 781, 787 (1954) (adverse possession must be so open and notorious that owner's knowledge will be presumed). But the trial court made no finding concerning adverse possession, and did not expressly conclude that Minton's possession was visible, open, exclusive, and unequivocal. *See Apex Financial Corp.*, 155 S.W.3d at 234. We assume that the finding of open and notorious possession pertains to the ultimate issue of whether Minton's occupation of the property was sufficiently open to give notice of his claims. Incorrect conclusions of law will not require a reversal if the controlling findings of fact will support a judgment under a correct legal theory. *See Westech Eng'g, Inc. v. Clearwater Constructors, Inc.*, 835 S.W.2d 190, 196 (Tex.App.-Austin 1992, no writ). Malecek testified that she purchased the property for investment purposes. Because she did not inhabit the property, she told Minton, who resided on the adjoining tract II, that he could use her property as if it were his own. As a result, from 1990 forward Minton used tract I for cutting hay, growing watermelons, storing equipment and grazing cattle. Minton also constructed a fence around tracts I and II. Max testified that he saw Minton going to and from the property, and made no distinction as to whether he observed Minton on tract I or II. The evidence also shows that Cook, the individual from whom Fletcher purchased the property, was aware of Minton's possession and claimed ownership of the property. In 1997, Cook sent a letter to Minton demanding that he vacate the property. Minton's attorney responded to the letter, and stated that Minton had been the owner of the tract for a number of years. Thus, the trial court's findings support the correct legal theory that Minton's use and occupation of the property

was sufficiently open, visible, exclusive, and unequivocal to put Fletcher on notice of a competing claim. *See Westech Eng'g Inc.*, 835 S.W.2d at 196.

Fletcher argues that because Malecek never occupied the property, there was nothing to put her on notice of any potentially adverse claims. We find this argument unpersuasive. Regardless of whether the property was occupied by Malecek or someone else, the presence of cows, a fence, and equipment, coupled with Max's observation of Minton going to and from the property would put a reasonable person on notice that further inquiry was in order. Moreover, if Fletcher was not aware that the parcel had been divided and sold in tracts, the distinction between Malecek's versus Minton's occupation of the property would be immaterial. Fletcher's failure to make a reasonable inquiry was at her own peril. *See Langley v. Norris,* 167 S.W.2d 603 (Tex.Civ.App.-Eastland 1942) *aff'd* 141 Tex. 405, 173 S.W.2d 454 (1943) (no bona fide purchaser protection where proper inquiry would have disclosed an adverse right). Thus, the trial court did not err in finding that Fletcher had actual or constructive notice, and this notice defeats her status as a bona fide purchaser. *See Madison,* 39 S.W.3d at 606. Fletcher's second issue is resolved against her.

▮▮▮ Having concluded that Fletcher is not entitled to the protection of a bona fide purchaser as to tract I, we examine whether the trial court erred in finding that Malecek is the owner of tract I. Actual or constructive notice to a subsequent purchaser will generally validate the unrecorded conveyance as between the prior and subsequent purchasers. *Prowse v. Walters,* 941 S.W.2d 223 (Tex.App.-Corpus Christi 1996, writ denied). Malecek testified that her purchase of the property from Salls is reflected in the contract for deed executed by both parties in October 1984. The contract recites the total consideration to be paid for the property and acknowledges Salls' receipt of $7,500 of the purchase price. Malecek stated that the remaining payments she made on the property were made well in advance of the due date. The payments were made by cash and credits from her other business ventures with Salls, and the property had been paid for in full by 1989. Malecek's final payment was made to Salls' bookkeeper. Pursuant to Salls' request, the payment was made in cash. Until 1989, she also paid Salls directly for her pro rata share of the property taxes. She tried to pay taxes after 1989, but the taxing authority would not allow her to do so. Without a deed to separate tract I from the rest of the parcel, it was not possible to determine the pro rata amount of taxes due on tract I.

Initially, Malecek was not aware that the contract for deed had not been filed. Attorney Crouch was supposed to have taken care of everything. When the taxing authority would not allow her to pay the taxes, Malecek attempted to contact both Salls and Crouch to obtain a deed. Salls had disappeared, but Crouch told her that a clear deed would be issued once the property was no longer tied up in Salls' bankruptcy. Malecek testified that she contacted Crouch concerning the deed on numerous occasions. The sale of tract I to Malecek by contract for deed is also detailed in the amended bankruptcy schedules Salls executed and filed in 1992. We conclude that the evidence is legally and factually sufficient to support the trial court's finding that Malecek is the owner of tract I. Fletcher's fifth issue is resolved against her.

## B. *Tract II.*

▮▮▮ There were two competing claims to tract II: Fletcher, who claimed the

property through her purchase from Cook; and Minton, who claimed the property through his contract for deed with Salls. In issues one, three, four, and six, Fletcher argues that the evidence is insufficient to support the finding that Minton is the owner of tract II. We disagree.

Minton signed a contract for deed with Salls in 1984, and has been on tract II continuously since that time. Minton made cash payments on the property until approximately 1994. As requested by Salls, Minton also paid Salls in cash for the taxes on the property. When Minton was close to the end of his scheduled payments on the property, he asked Salls about "completing the paperwork." He told Salls that he did not know what to do because he had never purchased property before. Salls told Minton he would get back with him on the paperwork, but he never did. In addition to Minton's testimony and the contract for deed, Minton's purchase of the property was also supported by an August 16, 1990 letter to Minton from Crouch on behalf of Salls. The letter stated that Minton's payments on the property were delinquent. Minton admitted that his payments were delinquent at the time, but testified that he subsequently brought the payments current.

Minton testified that he lived on tract II from 1984 until approximately 2000. He has three mobile homes, two sheds, several vehicles, and a catfish tank on the property. At some point, he also had some chickens and pigs. Minton testified further that he periodically brings materials such as bricks and sheet rock leftover from his construction jobs to store on the property. On one occasion, someone complained about the mess some of the materials made on the property. Minton acknowledged that "things got a little out of hand." An environmental enforcement agency came to the property to show Minton the proper way to clean up the mess, during which time he had several large dumpsters and a front-end loader on the property. Thus, there was not only evidence to suggest that someone occupied the property on a consistent basis, but also extraordinary activity that even a casual observer would be likely to notice. Fletcher owned property nearby, but could not recall if she called the county to complain about the mess on Minton's property. We conclude that the evidence is sufficient to support the trial court's finding that Minton openly and notoriously occupied tract II continuously from 1984. Like Fletcher's argument concerning the open and notorious occupation of tract I, the issue is really whether Minton's possession was sufficiently open to put Fletcher on notice of Minton's claim. The record supports the trial court's finding that Fletcher had notice. Fletcher's first issue is therefore resolved against her.

In her third and fourth issues, Fletcher attacks the trial court's findings that Max was aware that Minton occupied tracts I and II, and that Fletcher, through Max, had constructive, if not actual notice of Minton's claims to these tracts. As discussed previously, Max admitted that he had seen Minton going on and off of the property. He saw mobile homes and cows on the property. And he visited Minton on the property to discuss ownership of the property. Fletcher's argument that the homes, sheds and vehicles on the property could just as easily have been Cook's property is misplaced. The existence of the homes, sheds, and vehicles triggered a duty to make a reasonably diligent inquiry. Fletcher cannot decline to do so and then cloak herself in the protection of a bona fide purchaser. Fletcher's third and fourth issues are resolved against her.

Because Fletcher's agent was aware of Minton's use, occupation of, and claim to tract II, Fletcher had notice of a competing claim and is not a bona fide purchaser of tract II. The recordation law in Texas was meant to protect innocent purchasers without prior notice of a transfer from being injured or prejudiced by their lack of knowledge of a competing claim. *See Prowse*, 941 S.W.2d at 228. Fletcher failed to establish that she is the type of innocent purchaser this law seeks to protect. As a result, the trial court properly found that Minton is the owner of tract II. We resolve Fletcher's sixth issue against her.

### CONCLUSION

Having resolved all of appellant's issues against her, we affirm the judgment of the trial court.