

# NUMBER 13-19-00121-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ROSE MARY G. SANCHEZ AND
NOE G. SANCHEZ,                                    Appellants,

v.

CHRISTOPHER PAUL MONTALVO
A/K/A CHRIS MONTALVO AND
MADCHRIS, LLC,                                     Appellees.

On appeal from the 94th District Court
of Nueces County, Texas.

# MEMORANDUM OPINION

**Before Justices Benavides, Longoria, and Tijerina**
**Memorandum Opinion by Justice Tijerina**

We handed down our memorandum opinion and judgment in this cause on

January 7, 2021. Appellees filed a motion for rehearing wherein they requested that we

reissue our opinion (1) affirming the trial court's granting of summary judgment in

appellees' favor, or (2) "remove any conclusive fact findings against" appellee and clarify that there are fact finding issues for the fact finder to determine. We deny appellees' request for rehearing; however, we withdraw our memorandum opinion and judgment of January 7, 2021, and we substitute the following.

Appellants Rose Mary G. Sanchez and Noe G. Sanchez appeal the trial court's order granting summary judgment in favor of appellees Christopher Paul Montalvo a/k/a Chris Montalvo and MadChris, LLC. By five issues, appellants assert the trial court erred by: (1) finding that appellants did not have an executory contract pursuant to the property code; (2) finding that the seller, Dexter Wright, provided appellants with proper notice; (3) finding that appellees were bona fide purchasers; (4) finding that appellants' claims were barred by the statute of limitations or laches; and (5) dismissing appellants' interference with a contract and civil conspiracy claims. We reverse and remand.

## I. BACKGROUND

### A. The Contract

In 2004, appellants rented a residential property in Corpus Christi (the property) from Wright. In 2012, Wright offered to sell the property to appellants, and on June 9, 2012, they entered a contract to purchase the property from Wright. Wright provided the contract, which consisted of three pages and a combination of three different forms ("Promissory Note," "Option to Purchase," and "Governing Law"). The terms of the contract required appellants to pay a $5,000 down payment and monthly installments of $702 "with taxes" for approximately ten years before obtaining the deed. The monthly installments included payment for the property taxes, which escalated beginning in 2015

2

to account for the increase in property taxes.[1] Neither party recorded the contract in the Nueces County property records.

Appellants paid the $5,000 down payment and continued to live on the property for six more years. According to appellants, Rose moved out of the home, but Noe continued to live there until Hurricane Harvey damaged the home. Noe temporarily moved out of the property in 2017 while he actively repaired the home. Appellants continued to make their monthly payments, paid monthly electricity bills, received mail at the property, and left their personal belongings on the property.

Noe claims that on September 28, 2018, when he attempted to pay for September's and October's monthly installments, Wright demanded that appellants vacate the property because Wright had sold it to someone else. On October 9, 2018, appellants assert Wright changed the locks and had law enforcement remove appellants from the property.

That same day, Southern Builders Co., LLC ("Southern Builders") entered into a contract with Wright to purchase the property.[2] Thereafter, Southern Builders assigned its rights to the property to appellees by warranty deed, which appellees filed in the Nueces County real property records. According to appellees, they purchased the property from Wright seeking to make it habitable again because it appeared abandoned.[3]

---

[1] According to the terms of the contract, appellants made the following increased monthly payments to compensate for increased taxes: $725 in 2015, $750 in 2016, and $778.50 in 2017.

[2] Appellants claim that appellees own and control Southern Builders, and appellees do not dispute this. From the record, it appears Montalvo signed the contract.

[3] Appellees purchased the property for $38,000 while appellants were to pay over $87,000 over the course of their contract.

Appellees hired a title insurance company and obtained a title commitment to the property.

Before appellees closed on the property, appellants presented themselves to appellees with a contract titled "Promissory Note" under which they claimed an interest to the property alleging they had entered an executory contract with Wright in 2012. *See* TEX. PROP. CODE ANN. § 5.062(a). On October 15, 2018, appellants sued Wright for wrongful foreclosure, breach of contract, common law and statutory fraud, unjust enrichment, relief and offset, and civil conspiracy. Appellants also sued appellees for civil conspiracy and sought a declaratory judgment to determine their right to the property. According to appellants, they had an equitable right and interest to enforce their contract with Wright, were entitled to possession of the property, and sought to convert their executory contract into a warranty deed with a vendor's lien.

On November 8, 2018, appellees responded asserting they purchased the property for value from Wright, such that they were bona fide purchasers, seeking a declaration that the property was not encumbered by an equitable claim by the appellants, and seeking to quiet title, among other causes of action.

On October 16, 2018, appellants filed an application for temporary restraining order and temporary injunction requesting that the trial court prevent Wright from selling the property to appellees and to immediately return possession of the property to appellants. Wright and appellees generally denied appellants' claims, and the parties entered an agreed temporary injunction order, pending final disposition of the case.

**B.     Summary Judgment Motion**

Appellees filed a motion for partial summary judgment asserting that they acquired legal title to the property by warranty deed and were bona fide purchasers. They further asserted that appellants did not have an executory contract as a matter of law because appellants only produced a document titled "Promissory Note," and appellants' claims were barred due to the statute of limitations or laches. Appellees attached: (1) appellees' affidavit wherein Montalvo claimed he was a bona fide purchaser and acquired rights to the property from Southern Builders; (2) Wright's affidavit wherein he stated that appellants were in "serious" default and past due in the amount of $6,132.32 as appellants had failed to pay ad valorem taxes on the property; (3) the title insurance; (4) the settlement statement between appellees and Wright; (5) the warranty deed conveyed to appellees on October 19, 2018; and (6) appellees' attorney's affidavit wherein he stated it was his opinion that appellants did not have an executory contract as a matter of law.

In response to appellees' motion for summary judgment, appellants asserted their contract with Wright effectuated a sale of the property, appellees had notice of appellants' claims such that they were not bona fide purchasers, and Wright failed to give appellants the required statutory notice. As evidence, they attached: (1) the contract; (2) Noe's affidavit wherein he stated he made the July and August monthly payments without hindrance, and Wright accepted payments for these months; (3) Rose's affidavit wherein she averred she paid increased monthly installments to account for the increase in property taxes as documented by Wright in the contract; (4) monthly receipts from Wright dating July 2012 through July 2018; (5) numerous receipts of the repair work that was

5

being done on the home; and (6) pictures of the multitude of damages from Hurricane Harvey.

The trial court granted appellees' motion for partial summary judgment, finding that appellees owned the property in fee simple absolute and that neither Wright nor appellants had any equitable or legal entitlement to the property or any part of it.[4] Appellants appealed.

## II.    STANDARD OF REVIEW

We review the trial court's decision on a motion for summary judgment de novo. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). The movant has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a; *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). If the movant's motion and summary judgment proof facially establish a right to judgment as a matter of law, the burden shifts to the non-movant to raise a material fact issue sufficient to defeat summary judgment. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). A defendant seeking a traditional motion for summary judgment must either conclusively disprove at least one element of each of the plaintiff's causes of action or plead and conclusively establish each essential element of an affirmative defense. *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995) (per curiam). In deciding whether a genuine issue precludes summary judgment, we must treat all evidence favorable to the non-movant as true and indulge every reasonable inference

---

[4] The trial court severed appellants' claims against appellees making the motion for partial summary judgment final and appealable.

6

and resolve all doubts in its favor. *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017).

## III.    EXECUTORY CONTRACT

By their first issue, appellants claim the trial court erred in finding that they did not have any equitable or legal entitlement to the property pursuant to Subchapter D of the Texas Property Code. *See* TEX. PROP. CODE ANN. § 5.062(a). Specifically, appellants assert: (1) an executory contract does not require an option to purchase the property, (2) appellants had current possession of the property and used and intended to use the property as their residence, and (3) an executory contract does not require a residential lease.

## A.    Applicable Law

### 1.    Contract for Deed

An executory contract, or a "contract for deed," is a real-estate transaction that allows the seller of the property to retain title until the purchaser has paid for the property in full. *Flores v. Millennium Interests, Ltd.*, 185 S.W.3d 427, 429 (Tex. 2005); *Bryant v. Cady*, 445 S.W.3d 815, 819 (Tex. App.—Texarkana 2014, no pet.) ("An executory contract for real property typically results in the buyer being entitled to immediate possession of the property on the making of a down payment."). "A contract for deed differs from a conventional contract for the sale of realty, in which the seller and purchaser mutually agree to complete payment and title transfer on a date certain at which time the purchaser generally obtains both title and possession." *Bryant*, 445 S.W.3d at 819; *Graves v. Diehl*, 958 S.W.2d 468, 471 (Tex. App.—Houston [14th Dist.] 1997, no pet.)

7

(noting that under a contract for deed, title remains with seller until the purchase price is paid in full, which typically occurs in installments over the course of years). A contract for deed "serves to provide persons unable to obtain conventional mortgage financing an alternative means of purchasing real property." *Shook v. Walden*, 368 S.W.3d 604, 625 (Tex. App.—Austin 2012, pet. denied) (concluding that Subchapter D did not apply to a conventional contract for sale in which the seller and purchaser mutually agreed to complete payment and title transfer on a certain date).

### 2. Subchapter D

Although Subchapter D does not expressly define "executory contract," the provisions of Subchapter D apply "to a transaction involving an executory contract for conveyance of real property used or to be used as the purchaser's residence." TEX. PROP. CODE ANN. § 5.062(a); *Ferrara v. Nutt*, 555 S.W.3d 227, 240 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (concluding that contracts for deeds of property to be used as the purchaser's residence fall within the protections of Subchapter D). Texas Property Code Chapter 5, Subchapter D governs certain executory contracts for the conveyance of real property and imposes several procedural requirements, including notice and disclosure requirements, remedies upon default, and the purchaser's right to cancel the contract. *See* TEX. PROP. CODE ANN. §§ 5.061–.086 (titled "Executory Contract for Conveyance"); *Morton v. Nguyen*, 412 S.W.3d 506, 510 (Tex. 2013); *Smith v. Davis*, 462 S.W.3d 604, 609 (Tex. App.—Tyler 2015, pet. denied) (stating that executory contracts for residential properties are "highly regulated by the legislature"). Subchapter D was enacted to protect purchasers who execute a contract for deed. *Flores*, 185 S.W.3d at 435.

8

**B.     Discussion**

In their motion for summary judgment, appellees asserted that because the contract did not contain an option combined with a residential lease, it could not be an executory contract under Subchapter D of the property code, and therefore appellants were not entitled to Subchapter D protections. *See* TEX. PROP. CODE ANN. § 5.062(a)(2) (providing that under Subchapter D, "an option to purchase real property that includes or is combined or executed concurrently with a residential lease agreement, together with the lease, is considered an executory contract for conveyance of real property").

As previously stated, Subchapter D applies to (1) conveyances of real property (2) used or to be used as the purchaser's residence. *See id.*; *Ferrara*, 555 S.W.3d at 240 (providing that a contract with a mandatory purchase provision, as opposed to an option to purchase provision, falls within the ambit protections of Subchapter D of the property code). Thus, the protections of Subchapter D are not strictly limited to executory contracts that contain an option to purchase combined with a residential lease agreement. *See Ferrara*, 555 S.W.3d at 240. Here, the contract was for the conveyance of real property. Under this contract's terms, Wright agreed to sell the property to appellants, and appellants purchased the property from him on June 9, 2012. Moreover, it is undisputed that appellants used the property as a residence for over fourteen years. Furthermore, the terms of the contract provide that Wright agreed to retain title to the property until appellants paid for the property in full.[5]  *See Flores*, 185 S.W.3d at 429 (defining a contract

---

[5] Appellees state that "Whatever the agreement was between Wright and the [appellants] it was certainly not an executory contract."

9

for deed); *Nguyen v. Yovan*, 317 S.W.3d 261, 270 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (finding that "executory contracts" are synonymous with "contracts for deed"); *Yarto v. Gilliland,* 287 S.W.3d 83, 90 n.10 (Tex. App.—Corpus Christi–Edinburg 2009, no pet.) (same) *Zuniga v. Velasquez*, 274 S.W.3d 770, 771 (Tex. App.—San Antonio 2008, no pet.) (same); *Henderson v. Love*, 181 S.W.3d 810, 812 (Tex. App.—Texarkana 2005, no pet.) (same); *see also Flowers v. Zuniga*, No. 11–06–00144–CV, 2008 WL 1723225, at *1, (Tex. App.—Eastland Apr. 10, 2008, no pet.) (mem. op.) (same); *Sharp v. Smith*, No. 12–07–00219–CV, 2008 WL 257237, at *1, (Tex. App.—Tyler Jan. 31, 2008, no pet.) (mem. op.) (same). Therefore, we conclude that appellants raised a genuine issue of material fact as to whether Subchapter D applies to their contract because the contract is for the conveyance of real property used as appellants' residence. *See* Tex. Prop. Code Ann. § 5.062(a)(2); *Weaks v. White*, 479 S.W.3d 432, 439 (Tex. App.—Tyler 2015, pet. denied) ("In 1995, the legislature amended Chapter 5 of the property code to address serious abuses in the Texas–Mexico border region known as "the colonias," a rural area where many residents were financing the purchase of their homestead properties through contracts for deed."); *Marker v. Garcia*, 185 S.W.3d 21, 25 (Tex. App.—San Antonio 2005, no pet.) (noting that Subchapter D was enacted to provide protections for low-income individuals purchasing property under contracts for deed in the colonias along Texas's southern border); *see also Brooks v. Acosta*, 581 S.W.3d 485, 488 (Tex. App.—Austin 2019, no pet.) (holding that a lease-to-purchase clause was not an "option to purchase" as required to be considered an executory contract pursuant to subchapter D, where the lease-to-purchase clause did not contain a fixed price, merely stated the property could

10

be purchased at "market value," and lacked specification how "market value" would be determined). Accordingly, we reject appellees' argument that appellants' contract could not be an executory contract because it did not contain an option to purchase and a residential lease, and appellees were not entitled to a judgment as a matter of law on this basis. *See* TEX. R. CIV. P. 166a; TEX. PROP. CODE ANN. § 5.062(a)(2).

Next, appellees argued to the trial court that an executory contract requires immediate possession of the property and that the parties' contract provided for delivery of possession after payment was made to Wright in full. Appellees cite the following:

> After payment is made to [Wright] in full, [Wright] agree[s] to execute and deliver to [appellants] a bill of sale [deed] conveying the property to [appellants], and to deliver possession of [the property] to appellants . . . in as good condition as it now is, reasonable wear and tear excepted, and free of all liens and encumbrances.

While it is true that the contract recites Wright would deliver possession of the property after payment was made in full, appellants submitted evidence, which appellees did not dispute, that they lived on the property as their residence for fourteen years, gave Wright a down payment of $5,000 to purchase the property, and made monthly installments thereafter. See *Bryant*, 445 S.W.3d at 819 ("An executory contract for real property typically results in the buyer being entitled to immediate possession of the property on the making of a down payment."). Therefore, appellants also raised a genuine issue of material fact as to whether they were in immediate possession of the property.

## C.    Summary

Based on the evidence presented to the trial court, appellants raised a genuine issue of material fact as to whether their contract fell within the protections of Subchapter

11

D because (1) the contract provides that it was a transaction involving the conveyance of real property, (2) it is undisputed the property was used as the appellants' residence, (3) appellants presented evidence that they had immediate possession of the property, and (4) Wright was to retain title to the property until appellants paid for the property in full. *See* TEX. PROP. CODE ANN. § 5.062 (providing that Subchapter D applies to an executory contract that provides for the delivery of a deed from the seller to the purchaser more than 180 days from the date of the contract's execution). Therefore, the trial court erroneously granted appellees' motion for summary judgment on the basis that appellants did not have a legal entitlement to the property. *See Lightning Oil Co.,* 520 S.W.3d at 39. We sustain appellants' first issue.

## IV.    NOTICE

By their second issue, appellants claim that Wright violated § 5.063 and § 5.064 of the property code, such that the trial court erred in concluding appellants did not have a claim to the property.

Subchapter D provides specific remedies to the aggrieved purchaser when the seller does not comply with the statute. Section 5.064, entitled "Seller's Remedies on Default," provides that a seller may enforce the remedy of rescission or of forfeiture and acceleration against a purchaser in default under an executory contract for conveyance of real property only if:

(1) the seller notifies the purchaser of:

(A) the seller's intent to enforce a remedy under this section; and

(B) the purchaser's right to cure the default within the 30–day period described by Section 5.065;

(2) the purchaser fails to cure the default within the 30–day period described by Section 5.065; and

(3) Section 5.066 does not apply.

TEX. PROP. CODE ANN. § 5.064. Section 5.063, entitled "Notice," provides that notice must be in writing, delivered by registered or certified mail, be conspicuous and printed in 14–point boldface type or 14–point uppercase typewritten letters, and must include on a separate page the statement:

> YOU ARE NOT COMPLYING WITH THE TERMS OF THE CONTRACT TO BUY YOUR PROPERTY. UNLESS YOU TAKE THE ACTION SPECIFIED IN THIS NOTICE BY (date) THE SELLER HAS THE RIGHT TO TAKE POSSESSION OF YOUR PROPERTY.

*Id.* § 5.063. The notice must also identify and explain the remedy the seller intends to enforce and specify the delinquent amount itemized into principal and interest if the purchaser has failed to make a timely payment. *Id.*

In their petition, appellants filed a claim alleging that Wright violated § 5.063 and § 5.064 of the property code. Appellees requested summary judgment on appellants' claims, asserting that because there was no contract as a matter of law, Wright's alleged notice violations do not apply. In response to appellees' motion for summary judgment, appellants asserted that "at no time prior to [their eviction] had Defendant Wright provided [appellants] with any written notice of default, notice to cure, or notice to rescind the contract." Appellants provided the trial court with their monthly receipts wherein Wright failed to indicate they were in arrears for the months prior to September 2018. In the trial

13

court and on appeal, appellees did not provide any argument or evidence to refute appellants' assertion that Wright did not comply with the statutory notice sections of the property code. Because we have not been directed to evidence that Wright attempted in good faith to comply with notice requirements, appellees did not meet their burden of showing that no genuine issue of material fact exists and that they are entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a. Therefore, summary judgment was improper on this basis, and we sustain appellants' second issue.[6] *See id.*; *Nguyen*, 317 S.W.3d 261 at 269–70.

## V.    BONA FIDE PURCHASER

In their third issue, appellants claim the trial court erred in granting appellees' motion for summary judgment on the basis that appellees were bona fide purchasers. Specifically, appellants assert appellees had notice of appellants' contract with Wright and notice of their claims to the property. Thus, the bona fide purchaser inquiry centers on whether appellants raised a fact issue as to appellees' actual or constructive notice of any of the competing claims to the property.

## A.    Applicable Law

The Texas Property Code provides for the recording of real property transfers and limits the validity of unrecorded instruments as follows: "The unrecorded instrument is binding . . . on a subsequent purchaser who does not pay a valuable consideration or who has notice of the instrument." Tex. Prop. Code Ann. § 13.001. Thus, an unrecorded

---

[6] The record includes a document dated September 28, 2018, that appears to be an eviction notice wherein Wright stated appellants "had 5 days to be out of [the property] by October 3, 2018," for "nonpayment" and "back taxes." There is no finding that appellants received this document.

14

conveyance is binding on those who have knowledge of the conveyance. *Burris v. McDougald*, 832 S.W.2d 707, 709 (Tex. App.—Corpus Christi–Edinburg 1992, no writ). A person who acquires property in good faith, for value, and without notice of any third-party claim or interest is a bona fide purchaser. *Fletcher v. Minton*, 217 S.W.3d 755, 758 (Tex. App.—Dallas 2007, no pet.). Status as a bona fide purchaser is an affirmative defense to a title dispute. *Madison v. Gordon*, 39 S.W.3d 604, 606 (Tex. 2001).

"Notice" is broadly defined as information concerning a fact actually communicated to a person, derived by him from a proper source, or presumed by law to have been acquired. *Fletcher*, 217 S.W.3d at 758. Notice may be actual or constructive. *Id.* Actual notice results from personal information or knowledge, as well as those facts which reasonable inquiry would have disclosed. *Id.* Constructive notice is notice the law imputes to a person not having personal information or knowledge. *Id.*

## B. Discussion

To the trial court, appellees asserted they were without notice of a recorded instrument as required by law, and they relied upon the absence of such a filing when they closed on the purchase of the property on October 19, 2018. However, this argument fails because an unrecorded instrument is binding on those that have notice of the same. *See* TEX. PROP. CODE ANN. § 13.001. Second, they argued that they were "without notice of [an] executory contract" since the contract did not "combine an option to purchase with the right of possession under a residential lease," and "it was clear there was no conveyance of the property to [appellants]." This assertion, however, is based entirely upon appellees' legal conclusion that appellants did not have a viable claim to the

property. The summary judgment evidence, which we must treat as true, provides that appellees were aware that a contract between Wright and appellants existed and therefore had notice of appellants' claim to the property under the existing contract, irrespective of the legal significance of the contract or appellants' claim. *See Lightning Oil*, 520 S.W.3d at 45. Moreover, in a contract for deed, the seller retains title until the purchaser pays for the property in full, which generally occurs over a period of years, and under this contract, transfer of title was not to occur for another four more years. *See Flores*, 185 S.W.3d at 429; *Graves*, 958 S.W.2d at 471. Thus, appellees cannot rely on the lack of title transfer or the title commitment to assert they were without notice of appellants' claims to the property.

Appellees also claim that since appellants were in default of a promissory note, appellees were without notice of an interest in the property. Specifically, appellees state that a "Promissory Note is not an interest in real property or a conveyance of real property but is a negotiable instrument." We reject this argument because appellants raised a genuine issue of material fact as to whether their contract was a contract for deed or an executory contract rather than a promissory note regardless of its title.

Lastly, appellees relied on their attorneys' opinion that appellants had no equitable or legal right to the property and "as a consequence" appellees "were innocent purchasers." However, their attorney's opinion is merely his conclusion, as it appears to him, regarding appellants' claims; it cannot serve as a basis to assert appellees lacked notice of appellants' claim merely because their attorney concluded appellants did not have an executory contract. *See Madison*, 39 S.W.3d at 606; *La Brie v. Cartwright*, 55

16

Tex. Civ. App. 144, 148 (Civ. App. 1909) ("Where a fact is known sufficient to put a purchaser on inquiry, he cannot excuse himself from such inquiry by taking the opinion of an attorney upon an abstract of title."). Conversely, appellees' query to their attorney, and the fact that appellants brought suit with claims to the property four days before appellees purchased the property, raises a question of fact as to whether they had actual knowledge or suspicion of appellants' claims. Therefore, we conclude that appellees did not conclusively establish that they were "without notice, constructive or actual, of any third-party claim or interest," such that they were bone fide purchasers. *See Fletcher,* 217 S.W.3d at 758; *Booth*, 900 S.W.2d at 341.

Even assuming that appellees had conclusively established that they were bona fide purchasers, such that the burden shifted to appellants to raise a genuine issue of material fact as to appellees' status, appellants provided summary judgment evidence that appellees were aware of the contract before they purchased the property. *See Centeq*, 899 S.W.2d at 197. As evidence to support their assertion that appellees had actual or constructive notice of their claims, appellants attached their affidavits wherein they averred that on September 28, 2018, Noe purchased two money orders, which he submitted into evidence, for September's and October's monthly payments. Wright refused to accept the payments and instead informed Noe, as early as September 28, 2018, that he was evicting appellants from the property because he was selling it to someone else. Noe stated he was actively repairing the home. The record provides numerous receipts reflecting Noe's repair efforts including a receipt for the service of roof installation. *Fletcher*, 217 S.W.3d at 758 (providing that the presence of cows, a fence,

17

and equipment, coupled with the observation of the owner going to and from the property would put a reasonable person on notice). Moreover, according to appellants' affidavits, there were visible signs of possession of the property as appellants had personal belongings inside and outside the property and still were paying utilities on the property.[7] *See id.*

Rose's affidavit stated that on October 8, 2018, she was alarmed to find the door to her home was open and two Southern Builders employees were inside her home. According to appellants, Montalvo was the owner of Southern Builders, and appellees do not contest this fact. Rose told Montalvo's employees she was the owner of the home, but the employees stated Wright sold the home, and they were there to change the locks. It is reasonable to infer that appellees' employees were changing the locks as a result of Montalvo's knowledge or suspicion that appellants possessed the property. The next day, the men appeared again, and Rose called the police. No one challenges the fact that the employees were Montalvo's agents acting within the scope of their employment with Southern Builders. Therefore, any notice or knowledge the employees had about competing claims to the property is imputed to appellees. *See First Fin. Dev. Corp. v. Hughston*, 797 S.W.2d 286, 292 n.2 (Tex. App.—Corpus Christi–Edinburg 1990, writ denied) ("As a general rule, information acquired by an agent is imputed to the principal."); *Farmer Enterprises, Inc. v. Gulf States Ins. Co.*, 940 S.W.2d 103, 111 (Tex. App.—Dallas 1996, no writ) ("Notice to an agent, received while the agent is acting within the scope of

---

[7] Appellants asserted they had their refrigerator, twin beds and dresser, tables, a weight lifting set, a washer and dryer, pictures hanging on a wall, pots and pans, clothes, boxes with personal files and paperwork, a DVD player, and other personal belongings in the house.

18

his authority, constitutes notice to the principal."). The evidence here, if believed by the trier of fact, would support a finding that appellees were not "without notice, constructive or actual, of any third-party claim or interest." *Fletcher,* 217 S.W.3d at 758 (holding that a bona fide purchaser is without notice of a third-party claim or interest to the property).

Based on the foregoing, we conclude that appellants raised a genuine issue of material fact as to whether appellees had actual knowledge of appellants' claim to the property: (1) appellees had appellants' contract in their possession at least ten days before appellees purchased the property; (2) Rose told Montalvo's agents that she was the owner of the home and asked them to leave before appellees purchased the property; (3) appellants sued appellees before appellees purchased the property, claiming that they purchased the property from Wright in 2012; and (4) possession of the property was open and visible before appellees purchased the property. After reviewing the summary judgment evidence in the light most favorable to appellants, we conclude that genuine issues of material fact exist regarding whether appellees lacked notice of appellants' claims to the property, such that they were bona fide purchasers. *See Prowse v. Walters*, 941 S.W.2d 223 (Tex. App.—Corpus Christi–Edinburg 1996, writ denied) ("Actual or constructive notice to a subsequent purchaser will generally validate the unrecorded conveyance as between the prior and subsequent purchasers."). Accordingly, the trial court erred in its granting of summary judgment in appellees' favor on this basis. *See Lightning Oil Co.,* 520 S.W.3d at 39. We sustain appellants' third issue.

## VI. STATUTE OF LIMITATIONS/LACHES

Next, appellants assert that the trial court erred in finding their rights to enforce the

contract are barred as a matter of law due to the statute of limitations or laches.

Laches is generally available as an affirmative defense solely in suits in equity and therefore does not apply to statutory challenges. *Phillips v. The Dow Chem. Co.,* 186 S.W.3d 121, 129 (Tex. App.—Houston [1st Dist.] 2005, no pet.). In such a suit, absent extraordinary circumstances, the statute of limitations is the appropriate defense. *Houston Lighting & Power Co. v. City of Wharton*, 101 S.W.3d 633, 638 (Tex. App.—Houston [1st Dist.] 2003, pet. denied). Therefore, the statute of limitations is the appropriate defense, not the equitable defense of laches as this case presents no extraordinary circumstances. *See Weaks v. White*, 479 S.W.3d 432, 439 (Tex. App.—Tyler 2015, pet. denied) (holding that the common law defenses of estoppel and laches did not apply to prevent a purchaser under a contract for deed, who lived in property for 10 years, from asserting Subchapter D violations; statute of limitations was the appropriate defense, and the case presented no extraordinary circumstances).

In their motion for summary judgment, appellees asserted "that the statute of limitations or alternatively laches bars [appellants] from asserting [their claims] against [appellees] (as well as Wright for that matter)" because those violations occurred in June 2012. However, appellants did not have a cause of action against appellees until October 19, 2018, when appellees obtained the property from Wright by warranty deed. *See Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 202 (Tex. 2011) (providing that a cause of action accrues and the statute of limitations begins to run when facts come into existence that authorize a claimant to seek a judicial remedy). Therefore, appellants' claims did not arise in 2012 and were not barred by the statute of limitations. Accordingly,

the trial court erred in entering summary judgment on this basis. We sustain appellants' fourth issue.

## VII. CIVIL CONSPIRACY

By their last issue, appellants assert that the trial court erred in dismissing their interference with a contract and civil conspiracy claims. In their summary judgment, appellees argued: "Since there was no executory contract between Wright and [appellants], it follows that [appellees] could not have interfered with it." Furthermore, appellees argued that appellants "were not owners of the Property, and so there could not have possibly been a conspiracy to foreclose wrongfully or to interfere with any ownership rights." This is the extent of their argument. However, having determined that appellants raised a fact issue as to whether they had an executory contract pursuant to the property code and because appellees presented no other facts or evidence that appellants' claims for civil conspiracy and interference with a contract cannot exist, we find the trial court erred in granting summary judgment on this basis. *See Siegler*, 899 S.W.2d at 197. We sustain appellants' fifth issue.

## VIII. CONCLUSION

We reverse the trial court's order granting summary judgment and remand the case to the trial court for proceedings consistent with this opinion.

JAIME TIJERINA
Justice

Delivered and filed on the
6th day of May, 2021.

21